**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**No.** 16-2586-WCT

**UNITED STATES OF AMERICA**

**vs.**

**JEFFREY JASON COOPER,**
**a/k/a "Dr. Janardana Dasa,"**

**Defendant.** **UNDER SEAL**
______________________________/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? ____ Yes _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? ____ Yes _X_ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: [signature]

SETH M. SCHLESSINGER
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 64065
99 N. E. 4th Street
Miami, Florida 33132-2111
TEL (305) 961-9260
FAX (305) 536-4676

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

United States of America
v.

Jeffrey Jason Cooper,
a/k/a "Dr. Janardana Dasa,"

*Defendant(s)*

Case No. 16-2586-WCT

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of 05/12/2011 -- 08/04/2011 in the county of Miami-Dade in the Southern District of Florida, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1591(a)(1) | Sex Trafficking by Fraud. |
| 18 U.S.C. § 1343 | Wire Fraud. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Huy Nguyen, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 05/04/2016

*Judge's signature*

City and state: Miami, Florida

Hon. William C. Turnoff, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Huy Nguyen, being first duly sworn, hereby depose and state as follows:

**BACKGROUND**

1. I am employed as a Special Agent (SA) at the Department of Homeland Security, Homeland Security Investigations, and have been so employed for over 8 years. I currently investigate alien smuggling cases, but was previously assigned to the South Florida Human Trafficking Task Force, which had investigative responsibility for human trafficking crimes committed within the Southern District of Florida. Prior to my employment with HSI, I was employed as a United States Customs and Border Protection (USCBP) Officer for over 4 years. I have completed the Criminal Investigator Training Program, Immigration and Customs Enforcement Special Agent Training Program and the Immigration Officer Basic Training Course at the Federal Law Enforcement Training Center regarding the proper investigative techniques relating to violations of federal laws, including the application and execution of search, arrest, and seizure warrants. My experience as a federal law enforcement agent has included, among other things, the investigation of cases involving immigration violations, fraud, and human trafficking. I have received training and have gained experience in interviewing and interrogation techniques, arrest procedures, search warrant applications, the execution of searches and seizures, computer crimes, computer evidence identification, computer evidence seizure and processing, and various other criminal laws and procedures.

2. This affidavit is submitted in support of the attached complaint charging Jeffrey Jason COOPER, a/k/a "Dr. Janardana Dasa," with: 1) sex trafficking by fraud, in violation of 18 U.S.C. § 1591(a)(1); and 2) wire fraud, in violation of 18 U.S.C. § 1343.

3. The facts in this affidavit are based upon my personal knowledge, as well as knowledge, information, and documentation that I obtained from other law enforcement officers and witnesses. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the attached complaint, it does not include every fact known to me or to other law enforcement officers or witnesses regarding this matter.

**FACTS**

4. The U.S. Department of State administers the Summer Work Travel (SWT) program, which provides foreign college and university students with an opportunity to live and work in the United States during their summer vacations. Foreign students who participate in the SWT program receive a J-1 visa authorizing them to temporarily enter, live, and work in the United States. One of the purposes of the SWT program is to expose foreign college students to the people, culture, and way of life in the United States.

5. To facilitate the administration of the SWT program, the State Department relies on designated sponsors to assist program participants with obtaining suitable employment. Sponsors also screen potential participating American employers in order to confirm the terms and conditions of all job offers to be extended to program participants. One such sponsor is Company A, a Chicago-based international educational exchange organization designated by the Department of State as a J-1 SWT program sponsor.

6. Starting at least as early as July 2010, and continuing through May 2011 and thereafter, COOPER operated a prostitution business, and posted advertisements on the Internet website Backpage directed both at potential employees and interested customers of his prostitution business.

7. In May 2011, COOPER purported to be "Dr. Janardana Dasa," the owner and director of "Janardana's Yoga and Wellness S.A.," a company that operated a yoga studio. COOPER sought to arrange for foreign students to travel to the United States to work for his prostitution business under the SWT program. To accomplish this, COOPER completed and submitted to Company A several false written job offers in which COOPER claimed that the foreign nationals would be working as clerical workers for the yoga studio. At all times, COOPER knew that no yoga studio existed, and that foreign nationals working for him in the SWT program would not be working as clerical workers, but instead would be expected to perform erotic massages and sex acts. The written job offers completed and submitted by COOPER to Company A contained, among others, the following false statements:

a. COOPER's description of the business for which the SWT participants would work as follows: "We are yogic and holistic healing and wellness worldwide organization. We are dedicated to giving people knowledge of the numerous yogic disciplines, healthy eating and holistic lifestyle to promote better health and longer life."

b. COOPER's description of the prospective SWT participants' job duties as "performing clerical duties for the company, setting up appointments, answering phone calls."

c. COOPER's estimate that the prospective SWT participants would work forty-eight (48) hours per week, six days each week, and would earn an hourly wage of twelve (12) dollars.

8. COOPER's additional contacts with employees of Company A in furtherance of the scheme included, but were not limited to, the following:

a. A telephone conversation occurring on May 12, 2011 between COOPER and an employee of Company A located in Chicago, Illinois in which COOPER falsely claimed

that his prospective SWT participants would work from a commercial office space and perform office work such as answering phones, performing clerical duties, organizing retreats, cleaning, and computer programming;

b. A telephone conversation occurring on May 24, 2011 between COOPER and an employee of Company A located in Chicago, Illinois in which COOPER falsely claimed that his prospective SWT participants would live above the yoga studio, and they would perform clerical work, computer programming, light cleaning, and yoga appointment scheduling; and

c. A telephone conversation occurring on June 9, 2011 between COOPER and an employee of Company A located in Chicago, Illinois in which COOPER stated that two of his SWT participants had not been, and would not be, asked to perform any type of massage work.

9. Based upon COOPER's false representations, Company A sponsored J-1 visas for multiple college students from Kazakhstan, including Victim 1 and Victim 2, to travel to the United States under the SWT program to work as receptionists at COOPER's yoga studio. On or about May 13, 2011, J-1 visas were issued to Victim 1 and Victim 2. On May 30, 2011, Victim 1 and Victim 2 arrived in the United States from Kazakhstan to work for COOPER. After their arrival, COOPER revealed to Victim 1 and Victim 2 for the first time that, in fact, no yoga studio existed, and that Victim 1 and Victim 2 would instead be expected to perform erotic massages and sex acts. COOPER also directed female associates to explain to Victim 1 and Victim 2 the erotic massages and sex acts that they were expected to perform.

10. Beginning in June 2011, COOPER and his female associates posted advertisements on Backpage which offered erotic massages and sex acts which were to be performed by Victim 1 and Victim 2. One such advertisement, which as posted on multiple

occasions in the summer of 2011, was titled "Beautiful Ladies from Kyrgyzstan, Uzbekistan, Belarus, and Ukraine offering Sensual Body Rubs – 20" and further read as follows: "Work and travel students, visiting the South Florida area. Offering the very best in erotic full body massages. All gorgeous and very friendly. Their ages range from 18-22, completely "drama free" and very happy. Lovely Miami Beach waterfront location, plenty of parking. If truly interested in an amazing experience, don't hesitate to phone call: (305) 499-0597. ;)" Another such advertisement made specific reference to "gorgeous ladies from various Eastern European countries (Kazakhstan, Kyrgyzstan, Russian, Ukraine, Romania, Belarus) offering the very best in rare exotic full body rubs and therapeutic tantric treatments."

11. Victim 1 and Victim 2 performed erotic massages and sex acts as directed by COOPER and his female associates, and remitted the money earned from customers to COOPER and his female associates. Victim 1 and Victim 2 continued to perform erotic massages and sex acts for COOPER until their recovery by law enforcement on August 4, 2011.

12. Law enforcement officers interviewed COOPER regarding the events of May 2011 on two occasions; in September 2015, and more recently on April 30, 2016. On May 4, 2016, a record maintained by U.S. Customs and Border Protection (CBP) showed that COOPER is scheduled to depart the United States for Barcelona, Spain, on the morning of May 5, 2016.

**CONCLUSION**

13. In light of the facts described above, I respectfully submit that there exists probable cause to believe that Jeffrey Jason COOPER, a/k/a "Dr. Janardana Dasa," has committed the following offenses: 1) sex trafficking by fraud, in violation of 18 U.S.C. § 1591(a)(1); and 2) wire fraud, in violation of 18 U.S.C. § 1343. I therefore respectfully request

that the Court issue the attached complaint and arrest warrant charging COOPER with those offenses.

**FURTHER AFFIANT SAYETH NAUGHT.**

SPECIAL AGENT HUY NGUYEN
HOMELAND SECURITY INVESTIGATIONS

SUBSCRIBED and SWORN to before me this ___ day of May, 2016 in Miami, Florida.

HON. WIILIAM C. TURNOFF
UNITED STATES MAGISTRATE JUDGE