1              IN THE UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF FLORIDA
2                          MIAMI
                  CASE NO. **16-CR-20345-KMM-1**
3    _____

4    **UNITED STATES OF AMERICA**,
                         Plaintiff
5              vs.                          **September 14, 2016**

6    **JEFFREY JASON COOPER**,
                         Defendant.
7    _____

8                    **CHANGE OF PLEA HEARING**

9         BEFORE THE HONORABLE **CHRIS M. McALILEY**,

10        UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
     _____

11                  **A P P E A R A N C E S**

12
     FOR THE PLAINTIFF:    **MATTHEW T. GRADY**, AUSA
13   UNITED STATES OF      U.S. Department of Justice
     AMERICA               601 D Street NW, Suite 5343
14                         Washington, DC 20004
                           (202) 353-1216
15                         Matthew.grady@usdoj.gov

16   FOR THE DEFENDANT:    **ZELJKA BOZANIC**, ESQ
     JEFFREY JASON COOPER  BOZANIC & ASSOCIATES, PA
17                         800 Brickell Avenue Penthouse II
                           Miami, FL 33131
18                         (305) 643-1040
                           Zeljka@bozaniclaw.com
19

20   REPORTED BY:          **GIZELLA BAAN-PROULX**, RPR, FCRR
                           Official Court Stenographer for
21                         the Honorable Judge Rodolfo Ruiz, II
                           299 East Broward Blvd
22                         Fort Lauderdale, FL  33301
                           (954) 769-5568
23                         gizella_baan-proulx@flsd.uscourts.gov

24

25

## P R O C E E D I N G S

*(The following proceedings were held in open court.)*

  **THE COURTROOM DEPUTY:**  Calling the case United States of America versus Jeffrey Jason Cooper, case number 16-20345.

  Criminal Judge Moore superseding.

  **THE COURT:**  All right.

  Counsel, if you would state your appearances.

  **THE GOVERNMENT:**  Good afternoon, Your Honor.  Matthew Grady on behalf of the Civil Rights Division.

  **THE COURT:**  All right.

  **THE DEFENSE:**  Good afternoon, Your Honor.  Zeljka Bozanic on behalf of Mr. Cooper and also co-counsel Manuel Herrera.

  **THE COURT:**  Welcome.

  And, Mr. Cooper, if you would stand and be sworn, please.

Thereupon,

      **JEFFREY JASON COOPER,**

having been duly sworn by the courtroom deputy, testified as follows:

  **THE DEFENDANT:**  Yes.

  **THE COURT:**  All right.  You can have a seat.  You just want to be right in front of the microphone.

  So I understand first we need to arraign Mr. Cooper on the superseding information; is that right?

|   |   |
|---|---|
| 1 | **THE GOVERNMENT:**  That's correct, Your Honor. |
| 2 | **THE COURT:**  Go right ahead. |
| 3 | **THE DEFENSE:**  Thank you, Your Honor. |
| 4 | Judge, at this time we waive formal reading of the |

04:01  5  superseding information, enter a plea of not guilty even though

6  my client will plead guilty in a moment, and the discovery was

7  already received.

8  **THE COURT:**  Pardon?

9  **THE DEFENSE:**  We received the discovery already.

04:01  10  **THE COURT:**  All right.

11  And so Mr. Cooper, you understand that this is

12  information -- by signing the paper that I see here, you're

13  agreeing that the government doesn't have to take the step of

14  going to a grand jury and having a grand jury decide whether

04:01  15  there's enough evidence to charge you.  You're agreeing that

16  U.S. attorney himself can charge you in this document that's

17  called an information.

18  Do you understand all of that?

19  **THE DEFENDANT:**  Yes, Your Honor.

04:01  20  **THE COURT:**  All right.  So you were arraigned on the

21  superseding information, and I understand now you're here to

22  plead guilty to the two charges in that document; is that

23  correct?

24  **THE DEFENDANT:**  Yes, Your Honor.

04:02  25  **THE COURT:**  I'm obligated to inform you that because

1    you've been sworn to tell the truth, you have a legal duty to

2    be truthful.  If you're not truthful today, the government

3    could prosecute you for the additional crime of perjury.

4         Do you understand that?

04:02   5    **THE DEFENDANT:**  I do, yes.

6         **THE COURT:**  It's very important that you understand

7    everything that's said here today.  I will try to move this

8    along as quickly as I can.  However, if -- I'm happy to slow

9    down at any point if you have any questions for me or for your

04:02  10   attorney.

11        So would you assure me, sir, that if you're uncertain

12   about anything that is said, that you'll let me know that?

13        **THE DEFENDANT:**  Yes, I will, Your Honor.

14        **THE COURT:**  All right.

04:02  15   Tell me, sir:  How old are you?

16        **THE DEFENDANT:**  46 years old.

17        **THE COURT:**  And what's the highest level of education

18   you've had?

19        **THE DEFENDANT:**  Bachelor's degree.

04:02  20        **THE COURT:**  Have you ever been treated from or

21   suffered from any form of mental illness or dependency on drugs

22   or alcohol?

23        **THE DEFENDANT:**  No.

24        **THE COURT:**  I realize that you're in custody, but in

04:02  25   the last 48 hours, have you taken any drugs, medication, or

1    alcohol?

2            THE DEFENDANT:  No.

3            THE COURT:  How do you feel today, physically and

4    mentally?

04:03  5            THE DEFENDANT:  Very good.  I feel good.

6            THE COURT:  All right.  As you probably know, Judge

7    Moore is the presiding judge in this case, and if you plead

8    guilty today, he will be the judge who sentences you.  You have

9    the right to insist that Judge Moore also hear your guilty plea

04:03 10    or I can do so if all of you agree to that.

11            Are you agreeable to my presiding over this hearing,

12    Mr. Cooper?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  And Mr. Bozanic, how about you?

04:03 15            THE DEFENSE:  Yes, Your Honor.

16            THE COURT:  And Mr. Grady?

17            THE GOVERNMENT:  Yes, Your Honor.

18            THE COURT:  Okay.

19            So, Mr. Cooper, you certainly have a qualified

04:03 20    attorney representing you.  But she would not be much good to

21    you if you've not had the time you need to speak with her about

22    this matter.

23            Certainly, you'd want to talk about what you've been

24    accused of by the government and what the government's evidence

04:03 25    is.  You would want to discuss any defenses you might have and

1   how you might prove them.  You'd certainly want to discuss the

2   choice of whether you'd plea guilty or go to trial.

3          Have you had the time that you need to discuss those

4   matters and any other questions you may have with your

04:04  5   attorneys?

6          **THE DEFENDANT:**  Yes, I have, Your Honor.

7          **THE COURT:**  Have you been satisfied with the

8   representation of you?

9          **THE DEFENDANT:**  Yes, Your Honor.

04:04  10   **THE COURT:**  Okay.  Before you can plead guilty, I need

11   to be sure that you understand the legal rights that you give

12   up today when you plead guilty.  So I'm going review those with

13   you now.

14          First, you have the right to not be here because you

04:04  15   do not have to plead guilty.  You can insist that you're not

16   guilty and have a jury decide your guilt or innocence.

17          Do you understand that you have that right?

18          **THE DEFENDANT:**  Yes, Your Honor.

19          **THE COURT:**  If you were to go to trial, you would be

04:04  20   guaranteed the assistance of qualified attorney.

21          If for any reason your current attorneys could not

22   represent you at trial and you could not afford to hire a

23   replacement counsel, the Court would be sure to appoint

24   qualified lawyer to represent you at trial.

04:04  25          Do you understand that you have that right?

1      **THE DEFENDANT:**  I do, Your Honor.

2      **THE COURT:**  Okay.  If you were to go to trial,

3 everyone in that courtroom by law would have to presume you not

4 guilty of the charges.  That's because it would be the job of

04:05  5 the government counsel to prove your guilt beyond a reasonable

6 doubt.

7      Do you understand that you'd have those rights at

8 trial?

9      **THE DEFENDANT:**  I do, Your Honor.

04:05  10     **THE COURT:**  Okay.  If you were to go to trial, you

11 would have the right to hear all the government witnesses, to

12 see the government's evidence, to have your lawyer question the

13 government witnesses to bring out any information that might be

14 helpful to you.

04:05  15     You would also have the right to issue subpoenas to

16 any persons who might have information that you think could be

17 helpful to your new defense.

18     Do you understand that you'd have all those rights at

19 trial?

04:05  20     **THE DEFENDANT:**  Yes, Your Honor.

21     **THE COURT:**  If you went to trial, you would have a

22 choice in how to defend yourself.  You could get on the witness

23 stand and testify, call witnesses, and put evidence before a

24 jury or you could do none of that.

04:05  25     You could sit there and say not a word and see if the

1  government could do its job of proving you guilty beyond a

2  reasonable doubt.

3          Both are acceptable ways to defend oneself from

4  criminal charges.

04:06   5          Do you understand you'd have those choices in how to

6  defend yourself at trial?

7          **THE DEFENDANT:**  Yes, Your Honor.

8          **THE COURT:**  Okay.  By pleading guilty today, you give

9  up each of the legal rights I've just reviewed with you.

04:06   10          Do you understand that, Mr. Cooper?

11          **THE DEFENDANT:**  I do, Your Honor, yes.

12          **THE COURT:**  The crimes you're pleading guilty to are

13  felonies and under our laws, when someone is found guilty of a

14  felony, they typically lose important civil rights such as the

04:06   15  right to vote, hold public office, sit on a jury, and possess a

16  firearm.

17          Do you understand that your guilty plea today will

18  likely lead to your loss of those civil rights?

19          **THE DEFENDANT:**  Yes, Your Honor.

04:06   20          **THE COURT:**  Were you born in this country?

21          **THE DEFENDANT:**  Yes, Your Honor.

22          **THE COURT:**  So we don't have any immigration issues.

23          All right.  So I have before me a factual proffer and

24  plea agreement, the original.  Do you have a copy there.

04:06   25          **THE DEFENSE:**  Yes, Your Honor.

1        THE COURT:  So if you'd put a copy of the plea

2  agreement before Mr. Cooper.  Let me check with counsel.  This

3  is the same documents that were e-mailed to me earlier; is that

4  right?

04:07  5        THE GOVERNMENT:  The plea agreement is, Your Honor,

6  there have been two changes to the factual proffer since they

7  were sent to you yesterday.

8        THE COURT:  What are those?

9        THE GOVERNMENT:  Okay.  Your Honor, if I could direct

04:07 10  you to page 2 of the factual proffer.  In the first full

11  paragraph starting with the sentence "starting."  What the

12  parties did is they defined the term "erotic massages," and so

13  the parties added a definition of erotic massages to the end of

14  that paragraph and eliminated any future references to sex acts

04:07 15  or commercial sex acts, instead just referring to erotic

16  massages throughout the remainder of the factual proffer.

17        THE COURT:  Hold on one moment.  So the phrase

18  "commercial sex acts" has come out.

19        THE GOVERNMENT:  Yes, Your Honor.

04:07 20        THE COURT:  And erotic massages has been defined.

21        THE GOVERNMENT:  Correct, Your Honor.

22        THE COURT:  As you said.  Okay.  What else?

23        THE GOVERNMENT:  The second change is in that

24  paragraph below it starting with the phrase "based upon," the

04:08 25  last full sentence in that paragraph has been changed to read,

1    "After their arrival, victim one and victim two were made to

2    understand that instead, they would be performing erotic

3    massages in furtherance of the defendant's prosecution" --

4         **THE COURT:**  I'm sorry.  Let me stop you.  You're in

04:08  5    the bottom of page 2?

6         **THE GOVERNMENT:**  Yes, ma'am.

7         **THE COURT:**  Oh, the last full sentence.

8         **THE GOVERNMENT:**  Yes.

9         **THE COURT:**  Not of the paragraph but on page 2.

04:08  10        **THE GOVERNMENT:**  Exactly, Your Honor.  So about three

11    lines up where it says "after their arrival."

12        **THE COURT:**  Yeah.

13        **THE GOVERNMENT:**  So that sentence was a little bit

14    changed from the previous sentence in that same spot that was

04:08  15    e-mailed to the Court yesterday.

16        **THE COURT:**  It's really changed to take out commercial

17    sex acts and just to reference erotic massages; am I right?

18        **THE GOVERNMENT:**  That is one change.  And then also,

19    if you want, Your Honor, I can actually compare and contrast

04:09  20    the two sentences, if you want, because of the copy that was

21    sent to the Court yesterday, it was a little bit longer and has

22    since been shortened up.

23        **THE COURT:**  See, now, it would be helpful to have this

24    in advance.  I've read the whole factual proffer, underlined

04:09  25    it, and marked it up.  And I don't have a copy of this

1  revision, and I don't want to mark up the original.

2        So I'm trying to compare the two documents and make

3  changes in what you sent to me, it's really helpful.  That's

4  why I asked for it in advance.

04:09  5        THE DEFENSE:  I'm sorry.  That's our mistake.  I did

6  e-mail opposing counsel this morning after my client sent me an

7  e-mail late last night.  I received it this morning.  He, at

8  the last minute, found some things that he was asking me to

9  talk to the government about.

04:09  10        So that is our fault; it's not the government's.

11        THE COURT:  Right.  Well -- okay.  I appreciate that.

12  But, I mean, there's a reason why I have it.

13        THE DEFENSE:  Would you like my copy?  I have an extra

14  copy.

04:09  15        THE COURT:  I'm just trying to see if I can easily

16  mark this up.  I saw what I thought was an error on another

17  page that I'll bring to your attention in a minute.

18        So I'm looking at the sentence that begins, "On May

19  30th, 2011," right?  That's the sentence you changed?

04:10  20        THE GOVERNMENT:  No, Your Honor.

21        THE COURT:  Or "after their arrival."

22        THE GOVERNMENT:  Exactly.  That sentence has changed.

23        THE COURT:  Okay.  Instead of "the defendant

24  revealed."

04:10  25        THE GOVERNMENT:  Exactly, Your Honor.  It reads -- the

1   original version said, "After their arrival, the defendant

2   revealed to victim one and victim two for the first time that,

3   in fact, no yoga studio existed, and that the defendant would

4   offer no employment to victim one or victim two other than

04:10   5   performance of erotic massages and commercial sex acts in

6   furtherance of the defendant's prostitution business."

7           That was the original sentence that the Court has from

8   yesterday, and that has been revised to:  "After their arrival,

9   victims one and two were made to understand that instead, they

04:10   10   would be performing erotic massages in furtherance of the

11   defendant's prostitution business."

12           **THE COURT:**  Okay.  I have it.

13           So those are the changes you made, right?

14           **THE GOVERNMENT:**  That's correct, Your Honor.

04:11   15           **THE COURT:**  So look at the bottom of page 3, the

16   sentence -- let's see if you changed that.  I think you left

17   out the words "to believe" after victim two.

18           So what you've written there is "from on or about May

19   12th, 2011, and continuing through on or about August 4th,

04:11   20   2011, the defendant knowingly recruited, harbored, transport

21   provided, obtained the labor and services of victim one and two

22   by means of a scheme plan and pattern intended to cause victim

23   one and two that if they perform such labor or services, they

24   would suffer serious harm."

04:12   25           It doesn't -- something is missing?

1    So I think you meant to say that the defendant did all

2 these things, intended to cause victim one and two to believe

3 that if they did not perform such labor or services, they would

4 suffer serious harm?

04:12 5    THE GOVERNMENT:  One moment, Your Honor.  Because the

6 United States did take most of this language from the statute

7 of 18 USC 1590.  So I'll just cross reference to that real

8 quick.

9    THE COURT:  Okay.  Go ahead.

04:12 10    THE GOVERNMENT:  (Complies).

11    That's correct, Your Honor.  There should be a "to

12 believe" in between victim two and that.

13    THE COURT:  Ms. Bozanic, does that make sense to you?

14    THE DEFENSE:  Yes, Your Honor, it does.

04:13 15    THE COURT:  Okay.  So I'm going to write that in here.

16 So it's going to be on the top of page 4, and it's going to be

17 after victim two.  I'm going to insert "to believe."

18    I'm going to initial it.  And if one of you would come

19 up here, and I'll give you back that proffer.

04:13 20    And then you'll want to check and see if that -- you

21 think that's right.  And if you do, you can all initial it.

22 Thanks so much.

23    THE GOVERNMENT:  (Complies).

24    THE DEFENSE:  (Complies).

04:14 25    THE COURT:  Thank you so much.  All right.

1    So, Mr. Cooper, you have a copy of the factual proffer

2 in front of you.  We'll start there.  The original has the

3 addition of those two words, "to believe," right?  That's in

4 front of me.

04:14 5    But, otherwise, that copy should be exactly what I

6 have.  And what I have is a four-page document with signature

7 lines in the last page, and I see a signature above your name

8 dated with today's date.

9    Did you sign that factual proffer?

04:14 10    **THE DEFENDANT:**  Yes, Your Honor.

11    **THE COURT:**  Did you do so after reading every word of

12 it?

13    **THE DEFENDANT:**  I did, Your Honor.

14    **THE COURT:**  Do you agree that what's in that document

04:15 15 is accurate?

16    **THE DEFENDANT:**  Can I honest?

17    **THE COURT:**  It's the only thing you can be.

18    **THE DEFENDANT:**  Well, I mean, it's probably -- you

19 know, I mean, there's some parts that I would think should not

04:15 20 be there, but, you know, I'm trying to cooperate to some

21 degree, so --

22    **THE COURT:**  Well, I think we need to have a discussion

23 then.  What do you think should not be there?

24    **THE DEFENDANT:**  Well, first of all, when it says

04:15 25 "prostitution business."  I never had a prostitution business.

1  So that -- you know, that's there.  It's mentioned a few times.

2       THE COURT:  That's page 2 I see at the top of that

3  first paragraph on page 2.  It says that from 2010 to '11, you

4  operated a prostitution business, for example.  It says that

04:15  5  there.

6       THE DEFENDANT:  It does.  Yes, our Honor.

7       THE COURT:  Are you saying you didn't do that?

8       THE DEFENDANT:  I did not operate a prostitution

9  business, no.

04:15  10       THE COURT:  What do you call what you're doing?

11       THE DEFENDANT:  It's a wellness company, and massages

12  go on, but it's not a -- it wasn't a prostitution business.

13       THE COURT:  So erotic massages has been defined as one

14  of the changes in this factual proffer, right in that same

04:16  15  paragraph.

16       THE DEFENDANT:  Yes, Your Honor.

17       THE COURT:  Okay.  Is consisting of both a massage and

18  the physical manipulation of male clients' penises until

19  ejaculation.  And this is in return for payment by the

04:16  20  customers, correct?

21       Is that what you were engaging your employees to do?

22  These particular two people?

23       THE DEFENSE:  Judge, may I have a moment to speak to

24  my client?

04:16  25       THE COURT:  Right.  And talk about it.

1            THE DEFENSE:  Yes, Your Honor.

2            THE COURT:  It would seem to me that description of

3    having, in particular, that description is about the two

4    victims identified in this proffer.  If they were doing that

04:17  5    for hire, seems to me to fit the definition of a prostitution

6    business.

7            But, you know, this is Mr. Cooper's statement of what

8    he did, and either he feels it's accurate or he doesn't.

9            THE DEFENSE:  Yes, Your Honor.

04:17 10    May I just talk to him very briefly?

11            THE COURT:  Okay.

12            THE DEFENSE:  Thank you.  (Complies).

13            Judge, I did have a chance to speak to my client.  I

14    think that his definition of prostitution is maybe different

04:18 15    from many other people's definition, but I did speak to him and

16    I think we're ready to proceed.

17            THE COURT:  So let me hear what your definition is

18    then.

19            THE DEFENDANT:  Okay.  I guess we can -- you know, we

04:18 20    can just continue with what we were going to --

21            THE COURT:  Well, here is the thing.  We can't quite

22    just continue.  You told me that you feel that you didn't

23    operate a prostitution business.  I realize that's something

24    that has a definition or a meaning.

04:18 25            You spoke with your lawyer.  I don't want to know what

1  you spoke about.  And now we're back.  So I need to check back

2  in with you.

3          Do you have a problem -- can you agree with the

4  language that's in this document that you've signed?  It's

04:19  5  called a factual proffer.  It's a statement of fact about what

6  you did to commit the crime.

7          That statement of fact includes the statement that you

8  operated a prostitution business.  Either you are in agreement

9  with that or you're not.  It's your statement, not mine.  I

04:19  10  realize it's negotiated between lawyers, but ultimately it's

11  your statement.

12          THE DEFENDANT:  Okay.  I'll accept that statement.

13          THE COURT:  Well, to be really clear, what I'm reading

14  here -- and let me check in with Mr. Grady.  I'm reading here

04:20  15  that at least this definition of erotic massages which is in

16  the factual proffer that I just read would, am I right, come

17  within the definition of running a prostitution business?  Is

18  that fair to say?

19          THE GOVERNMENT:  The government believes that's fair

04:20  20  to say, Your Honor.

21          THE COURT:  So that's as far as I can see from this

22  document; that you were having these women perform those

23  services as part of a prostitution business.  That's how I read

24  it.  Is that accurate?

04:20  25          THE DEFENDANT:  Yes, Your Honor.

1          **THE COURT:**  Okay.  Okay.  You have, I think, some

2     other concerns about the document.  The factual proffer not

3     being accurate.

4          **THE DEFENDANT:**  No, that was the only thing that I --

04:20   5          **THE COURT:**  Are you sure?  Because I thought it was

6     more than one.  Let me say this.  This is really important.

7     You only get to do this once.  A guilty plea.  You can't come

8     back later on and say, "I didn't really understand what I was

9     admitting to.  I didn't understand what I was pleading guilty

04:21  10     to.  I didn't understand the consequences of my pleading

11     guilty."

12          I'll stay here until midnight if that's what it takes

13     to make sure you understand it because this is your one chance.

14          So if there's anything else in this document you have

04:21  15     any concern about, this is the one time you have to say.

16          When I say "concerned about," that you do not feel is

17     truthful.  You do not feel is accurate.

18          **THE DEFENDANT:**  Everything else is fine, Your Honor.

19          **THE COURT:**  Okay.  All right.  So the plea agreement,

04:21  20     I have the original.  Do you have a copy there?

21          **THE DEFENDANT:**  Yes, I have a copy.

22          **THE COURT:**  So it's a five-page document.  Again,

23     there are signature lines on the last page, and I see a

24     signature above your name.

04:22  25          Did you sign that plea agreement today?

1          THE DEFENDANT:  Yes, I did, Your Honor.

2          THE COURT:  Did you do so after reading every word of

3 it?

4          THE DEFENDANT:  Yes, Your Honor.

04:22  5          THE COURT:  Do you believe you understand what is in

6 this document?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Do you agree to the terms of this

9 agreement?

04:22 10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Okay.  All right.  So those original

12 documents will be filed with the Court.  And -- let me --

13          So what I'm going do now is I'm going to review the

14 plea agreement with you.  Although you have it there, I suggest

04:22 15 you not try to follow it by looking at it because I'm going to

16 jump around, and I'm going to summarize it.

17          It's there, though, if you have any concern about the

18 way that I described that document.  We'll stop.  You can read

19 it.  You can talk to your lawyer.  You can ask me any

04:23 20 questions.  Okay?

21          THE DEFENDANT:  Okay.

22          THE COURT:  So if you have any uncertainties, would

23 you let me know that?

24          THE DEFENDANT:  Yes, Your Honor.

04:23 25          THE COURT:  Okay.  So, first, I see you're pleading to

1   the two charges that are in the superseding information.

2   They're the same charges; that is, that from May of 2011 to

3   August of 2011, while in Miami-Dade County and elsewhere, that

4   you knowingly recruited -- and I'm shortening up on the words,

04:23   5   but you got people to provide labor and services in violation

6   of the law.

7         This was involuntary servitude or forced labor that

8   you recruited these two particular young women, these two

9   victims, to engage in these erotic massages and did so contrary

04:24  10   to U.S. laws.

11         That's my summary of the charge.  Does that -- is that

12   the crime?  Are those the crimes you're pleading guilty to?

13         **THE DEFENDANT:**  Yes, Your Honor.

14         **THE COURT:**  Let me say this.  Because I'm summarizing

04:24  15   things, it could be I describe something a little differently

16   than you've understood it.

17         I'm not trying to confuse you, but if I do, you will

18   let me know, right?

19         **THE DEFENDANT:**  Yes, Your Honor.

04:24  20         **THE COURT:**  So I understand you're pleading guilty to

21   those two charges, and that the plea agreement sets out the

22   maximum possible penalties that you could face.

23         So the law would allow Judge Moore for each count to

24   sentence you to a term of imprisonment anywhere from 0 months

04:24  25   in jail up to 20 years.  And he could run sentences

1  consecutively, so your worst possible case scenario could be

2  that he could sentence you to 20 years on Count One and 20

3  years on Count Two for 40 years of incarceration.

4          I'm not telling you what's going to happen because I

04:25  5  don't know what your sentence will be, but that is

6  theoretically possible.

7          Do you understand that?

8          **THE DEFENDANT:**  Yes, Your Honor.

9          **THE COURT:**  After any term of imprisonment, Judge

04:25  10  Moore has the authority to sentence you to a period of

11  supervised release under the supervision of a probation officer

12  for a period of up to three years.  Again, that could be run

13  consecutively for a total of six years.

14          Do you understand?

04:25  15          **THE DEFENDANT:**  Yes, Your Honor.

16          **THE COURT:**  For each count, he has the authority to

17  order you to pay a fine of any amount from 0 dollars up to

18  $250,000.  And if you run that consecutively, that would be a

19  total possible fine of $500,000.

04:25  20          Do you understand he has that authority?

21          **THE DEFENDANT:**  Yes, Your Honor.

22          **THE COURT:**  Okay.  And he must order that you pay

23  restitution, and I have a question for the lawyers.

24          The plea agreement says, "which could amount to as

04:25  25  much as $10,000 or more."

1    I'm not sure what that means.

2    **THE GOVERNMENT:**  Basically, Your Honor, we were just

3 trying to provide an estimate of what we think the restitution

4 amount might be.  And we believe $10,000 is likely the most

04:26  5 amount of restitution the defendant will be required to make

6 for purposes of his plea.

7    **THE COURT:**  Is the restitution, for example, the

8 expenses that the victims undertook to come to this country and

9 things of that nature?

04:26  10    **THE GOVERNMENT:**  No, Your Honor.  Restitution is

11 governed under 18 USC 1593, which basically mandates -- and

12 it's required under 1593 -- that they receive essentially the

13 gross proceeds of what they have received for engaging in these

14 erotic massages.  It's intended to disgorge the entire profits

04:26  15 made by the defendant for using their services.

16    **THE COURT:**  I see.  Okay.

17    So, Ms. Bozanic, do you agree that's what we're

18 talking about with restitution here?

19    **THE DEFENSE:**  Yes, Your Honor.

04:26  20    **THE COURT:**  Okay.  So, Mr. Cooper, I'll jump ahead to

21 something that is elsewhere in this agreement.

22    When you plead guilty, you or anybody else, you do so

23 without any assurance as to what your sentence will be other

24 than it can't be more than the maximums I've just disclosed to

04:27  25 you.  So -- and I'm going to come back to this restitution

1   issue in a minute.

2          I have to believe you're a smart guy, and you've asked

3   your lawyers for their opinion about what your likely sentence

4   is going to be.  It would be a smart question to ask, and who

04:27   5   knows, you may have asked other people for their opinions.  All

6   I can do is give you an educated guess.

7          The only person in the planet who could know what your

8   sentence will be is Judge Moore, and I can assure you if he

9   doesn't because you haven't pled guilty yet.

04:27  10          So you don't know what your sentence will be.  And

11  that's just a fact, and I need to be sure that you have that

12  same understanding of what I've just said.

13          Does that sound right?

14          **THE DEFENDANT:**  Yeah, sounds right.

04:28  15          **THE COURT:**  Okay.  Now, restitution.  Restitution that

16  is to return to the victims losses that they experienced

17  because of your illegal conduct.  That's generally the notion

18  of restitution.  Sounds like it's a little bit different here

19  by law.  You've just heard the prosecutor describe what it

04:28  20  would be.

21          Restitution is mandatory.  It sounds like that number

22  hasn't been completely nailed down by agreement between the

23  parties.  It sounds like the parties have made kind of a

24  general estimate of the number thinking that it's in the

04:28  25  $10,000 range.  Ultimately, Judge Moore will be the one to

1   decide what the amount of restitution is.

2        So, once again, what we're saying here is you're going

3   to have to pay restitution.  Judge Moore is going to have to

4   decide what that amount is.  And you're put on notice that the

04:28   5   lawyers think it's in the neighborhood of $10,000.

6        Does all that make sense?

7        THE DEFENDANT:  Yes, Your Honor.

8        THE COURT:  Am I right about that?

9        THE GOVERNMENT:  That's correct, Your Honor.

04:29  10        I'd also like to add as well the reason we have "or

11  more" in there is because also, 1593 also cross references to

12  2259 to say restitution is due for the full amount of the

13  victims' losses.  And those could include medical services

14  related to physical, psychiatric, or psychological care.

04:29  15        So, for example, if victim one is receiving

16  psychiatric care, those costs could be included in restitution,

17  which is why we have "or more" included in the language.

18        THE COURT:  That makes sense to me.

19        Do you understand that, Mr. Cooper?

04:29  20        THE DEFENDANT:  Yes, Your Honor.

21        THE COURT:  Okay.  So that's why that number is -- you

22  can't really nail down completely at the moment.

23        Do you understand that?

24        THE DEFENDANT:  Yes.

04:29  25        THE COURT:  Okay.  So those are the maximum possible

1  penalties.  Do you understand what I've said?

2          THE DEFENDANT:  I do.  Yes, Your Honor.

3          THE COURT:  At the date of your sentencing, you're

4  going to have to pay $200 as a special assessment also.  Your

04:29  5  sentence, though, will not be decided until the Court considers

6  the sentencing guidelines.

7          So not long after today, you're going to meet with the

8  probation officer who will interview you and speak to the

9  government to gather information about what you did to commit

04:30  10  these crimes, and that probation officer will prepare a report

11  that you'll see before your sentencing.

12          And an important part of that report is that the

13  probation officer will do a calculation of the sentencing

14  guidelines as they apply to your case.  The guidelines are a

04:30  15  numerical calculation that end up with a number that we call an

16  adjusted offense level, and that number corresponds to a range

17  of punishment.

18          I'm going to emphasize for you I don't know what your

19  sentencing guidelines are.  So anything I say to you is really

04:30  20  just meant as an example, okay, that I'm making up any numbers

21  to explain what I'm saying.

22          Does that make sense?

23          THE DEFENDANT:  It does, yes.

24          THE COURT:  So just to illustrate what I'm saying, I'm

04:31  25  going to make up a sentencing guideline range for imprisonment.

1  Let's say that the sentencing guidelines required --

2  recommended that you go to prison between four and five years.

3  I've just made up numbers.  Judge Moore will have to seriously

4  consider in that example sentencing you to no fewer than four

04:31   5  years and no more than five years.  And taking my make-believe

6  example, if he did that, he would be sentencing you within the

7  guideline range.

8           Does that make sense?

9           **THE DEFENDANT:**  It does.  Yes, Your Honor.

04:31  10  **THE COURT:**  There are circumstances, however, in which

11  Judge Moore would not have to follow the recommendation of the

12  guidelines.

13           So, again, taking my make-believe example, if he were

14  to sentence you to fewer than four years or more than five

04:31  15  years in prison, he would be sentencing you outside of the

16  guideline range.

17           Does my example make sense?

18           **THE DEFENDANT:**  Yes, Your Honor.

19           **THE COURT:**  Okay.  Here is an important point.  If

04:31  20  Judge Moore sentences you to more than the guidelines recommend

21  or if he otherwise sentences you in some way that leaves you

22  pretty disappointed, it's worse than the estimates or the

23  advice that you got from your lawyers or from others, what

24  you're doing today is final.  What you will not be able to do

04:32  25  is to withdraw your guilty plea.

1        Do you understand that?

2        **THE DEFENDANT:**  I do.  Yes, Your Honor.

3        **THE COURT:**  Okay.  Now, regarding the guidelines, I

4   see that there are two recommendations that the government is

04:32   5   agreeing to make to Judge Moore about how he does that

6   guideline calculation.  And these recommendations are favorable

7   to you.

8        First, they're going to recommend that whatever that

9   adjusted offense level number is, that it be reduced by two

04:32   10   levels to give you some credit for accepting responsibility for

11   your conduct.

12        And second, if your guideline offense level is a

13   number 16 or higher -- and I don't know if it will or if it

14   won't be, but if it is -- the government will recommend Judge

04:33   15   Moore reduce that number by one additional level to give you

16   some credit for acknowledging or announcing your decision to

17   plead guilty early enough to save everybody time and work.

18        Now, the government would not have to make these

19   favorable recommendations, however, if one of the following

04:33   20   three things were to happen.

21        If when you meet with the probation officer you're not

22   entirely truthful and the government were to know to find that

23   out, it would not have to make those favorable recommendations.

24        Secondly, if the government were to learn that at some

04:33   25   point before today you lied to the government again, it would

1  not have to make those recommendations.

2          And last, if after today but before your sentencing

3  you engage in some kind of misconduct -- for example, if you

4  committed another crime -- again, the government would not have

04:33  5  to make those favorable recommendations.

6          Do you understand that?

7          **THE DEFENDANT:**  Yes, Your Honor.

8          **THE COURT:**  The government has said in this agreement

9  also that it recognizes it has to keep the promises it makes in

04:34 10  this agreement.  This is a contract that you have with the

11  government.  It has to honor this contract.

12          But beyond that, it's free to offer any information or

13  any opinions it has about you to the probation office and to

14  Judge Moore.

04:34 15          Do you understand that?

16          **THE DEFENDANT:**  Yes, Your Honor.

17          **THE COURT:**  Okay.  Also, I mentioned the

18  recommendations the government's going to make.  I can assure

19  you Judge Moore will give a lot of thought to them, but he may

04:34 20  not agree with them.  And he doesn't have to follow any

21  recommendations that the parties make to him unless the law

22  mandates him doing what's recommended.

23          Does that make sense?

24          **THE DEFENDANT:**  Yes.

04:34 25          **THE COURT:**  Okay.  Last, I see that you have agreed to

1  assist the government in forfeiture of any assets or property

2  that you got with assets that you or others got illegally as a

3  part of your criminal conduct.

4          So your cooperation with that could mean that you

04:35  5  might agree that an order be entered ordering you to give

6  back -- to give to the government any of those assets.

7          You might help transfer any assets you have that are

8  subject to forfeiture or identify what those assets are.

9  Things of that nature.  You're not going to resist forfeiture

04:35  10  if it's required by the law.

11          Does that make sense?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Okay.  The last thing that's in here is it

14  says that what we have just reviewed is the entire agreement

04:35  15  you have with the government.

16          So is that true?

17          THE DEFENDANT:  It is true.  Yes.

18          THE COURT:  Okay.  Asking you about the government or

19  anybody else, other than what we have already just reviewed,

04:35  20  has anyone made any promises to you, said anything to you,

21  pressured you, threatened you, done anything to convince you to

22  plead guilty today?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  Is it fair to say that your decision to

04:35  25  plead guilty in the end is yours alone?

1        **THE DEFENDANT:**  Yes, Your Honor.

2        **THE COURT:**  Okay.  So what we're going to do now is

3   I'm going to ask the -- Mr. Grady to tell us what the elements

4   are of the crimes you're pleading guilty to.  When the law

04:36  5   describes certain conduct as illegal, what we lawyers do is we

6   break it down into pieces or parts and we call it the elements

7   of the crime.

8        And we do this because it's important that we all have

9   the same understanding of what the government would have to

04:36  10   prove beyond a reasonable doubt for a jury to find you guilty.

11   And then I'm going to review with you this factual proffer and

12   what you did.

13        The reason we do this is the Court has to be sure

14   that, in fact, there's evidence that could allow a jury to find

04:36  15   you guilty.  If that weren't the case, if we thought you were

16   not guilty, we wouldn't accept your guilty plea.

17        Does that make sense?

18        **THE DEFENDANT:**  Yes, Your Honor.

19        **THE COURT:**  All right.  Go ahead, Mr. Grady.

04:36  20        **THE GOVERNMENT:**  Your Honor, the United States has

21   identified three elements for the offenses of 18 USC 1590.  The

22   first element is that the defendant knowingly recruited,

23   harbored, transported, provided, or obtained another person.

24        The second element is that the defendant provided and

04:37  25   obtained the labor and services by means of a scheme and plan

1  to cause the other person to believe that if the person did not

2  perform such labor and services, that person would suffer

3  serious harm.

4      The third element is that the defendant knew or

04:37  5  recklessly disregarded that providing or obtaining the labor

6  and services of this other person was by the means described

7  above.

8      **THE COURT:**  That the defendant knew that he got the

9  labor or services by putting that person under the impression

04:37 10  that if they didn't provide them, they would suffer serious

11  harm?

12      **THE GOVERNMENT:**  Yes, Your Honor.

13      **THE COURT:**  Okay.  All right.  I'm not going to read

14  the factual proffer, but I'm going to go through some of it

04:38 15  with you, Mr. Cooper.  And to the extent you can put some of

16  this in your own words, it will be helpful and we'll get

17  through this a little bit faster.

18      Let me start off by saying my understanding is the

19  Department of State has something called a summer work travel

04:38 20  program, and that's a program that allows university students

21  from other countries to come to this country under a J-1 visa

22  during their summer break and to work here, and the purpose is

23  to, really, an educational purpose.  That's what this program

24  is about.

04:38 25      Is that your understanding also?

1          **THE DEFENDANT:**  Yes, Your Honor, it is.

2          **THE COURT:**  And at the time of your crime, you were

3     familiar with this program and looked to take advantage of it.

4          Is that fair to say.

04:38  5          **THE DEFENDANT:**  Yes, Your Honor.

6          **THE COURT:**  Okay.  All right.  And so I gather that if

7     the State Department, what it does is it gets sponsors to

8     allow -- to help these students find appropriate jobs in this

9     country and that one such sponsor is a company in Chicago which

04:39 10     is called on this proffer company A.

11          Is that -- so far, are you comfortable with that?

12          **THE DEFENDANT:**  Yes, Your Honor.

13          **THE COURT:**  And I gather you were familiar with

14     company A, you learned about them at the time?

04:39 15          **THE DEFENDANT:**  No.  Actually, they contacted me.  I

16     had never heard, you know, about them, but they had they

17     reached out to me.

18          **THE COURT:**  So they reached out to you to -- why was

19     that?  Why did they reach out to you?

04:39 20          **THE DEFENDANT:**  Because apparently, a friend of one of

21     those, you know, students who was working traveled the prior

22     summer, referred one of those students to contact CCI -- the

23     company's name is CCI -- to contact me.  Apparently, that's

24     what I've -- that's what happened.

04:39 25          **THE COURT:**  So one of the two women referred to as

 1  victim, I think, A and B -- one and two.

 2           THE DEFENDANT:  Yeah, victim one I think it was.

 3           THE COURT:  Okay.  Victim one, she had -- was in touch

 4  with this company A, right?

 5  **04:40**        THE DEFENDANT:  Yeah.

 6           THE COURT:  About wanting to come here from

 7  Kazakhstan.  They both were coming from Kazakhstan; is that

 8  right?

 9           THE DEFENDANT:  Yes, Your Honor.

**04:40** 10           THE COURT:  And they came, I guess, in the summer --

11  the summer of 2011; is that right?

12           THE DEFENDANT:  That's right.  That's correct.

13           THE COURT:  And somehow victim one knew about a

14  business that you had and wanted to work for your business?

**04:40** 15           THE DEFENDANT:  Yeah.  Yeah.  She was referred by a

16  friend of hers who had come the prior summer that I met just,

17  you know, on -- in Miami Beach on Lincoln Road.  Her friend, I

18  met her friend just in a casual environment and had referred

19  victim one to contact the company A, CCI, which is the name of

**04:40** 20  the company to contact me.  So CCI actually reached out to me.

21  I didn't hear -- I didn't know of them prior to May of 2011.

22           THE COURT:  Okay.  And they contacted you saying that

23  there was some college students from Kazakhstan who apparently

24  had an interest in maybe working at your business for the

**04:41** 25  summer of 2011; is that right?

1          THE DEFENDANT:  Correct.

2          THE COURT:  And you said, sure, you were interested?

3          THE DEFENDANT:  Well, they had already sponsored their

4  visa, actually, and they just needed someone to be a host to

04:41  5  be -- you know, it's called a host.

6          So they reached out to me and asked me would I want to

7  host -- am I interested in hosting, and I said okay.

8          THE COURT:  And this is about the two women who were

9  referred to as victims one and two in the information, right?

04:41  10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Okay.  And at that time, I guess it's

12  starting in May of 2011, but certainly in the summer of 2011

13  when these young women were with you, you were advertising on

14  Backpage, am I right, that you had a Janardana Yoga and

04:42  15  Wellness Studio?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Is that right?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Did you, in fact, operate a yoga studio?

04:42  20          THE DEFENDANT:  Yes, I do, yeah.

21          THE COURT:  Okay.  And did you tell company A that

22  these students could work at your yoga studio?

23          THE DEFENDANT:  Yes.

24          THE COURT:  As receptionist; is that right?

04:42  25          THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Now, that was false; is that right?

2          As it turned out, they didn't come to work for you as

3     receptionists; is that right?

4          THE DEFENDANT:  Can I -- just one second, Your Honor?

04:42  5          THE COURT:  Sure.

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  You falsely represented to company A that

8     these two young women would be coming to work as receptionists

9     in your yoga studio; is that correct?

04:43  10          THE DEFENDANT:  That's correct.

11          THE COURT:  In fact, what you had in mind was them

12     performing these erotic massages; is that right?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  Okay.  You didn't tell company A that

04:43  15     that's what they would be doing.  Is that fair to say?

16          THE DEFENDANT:  Well, there's a little more to it than

17     that, but, I mean, just to keep it what is in the factual

18     proffer, I'll agree to that.  But there was a little more said

19     to company A because they had e-mailed me, and I talked to them

04:43  20     on the phone.

21          So there was more that was said.  It just wasn't that

22     cut and dry like you mentioned, Your Honor.

23          THE COURT:  Okay.  Mr. Grady, does that matter in

24     this?  Should I -- I don't want to have -- we're not going to

04:43  25     leave here with any ambiguity about what Mr. Cooper did.  I'm

1  inferring that perhaps company A had some knowledge.

2      **THE GOVERNMENT:**  Yes, I would say it's safe to say

3  that there were multiple telephone calls between company A and

4  the defendant.  But I think it's fair to summarize as well that

04:44  5  the defendant did not tell company A that these particular

6  victims, victims one and two, would be performing erotic

7  massages as defined in the factual proffer.

8      **THE COURT:**  Okay.

9      Are you comfortable with that statement, Mr. Cooper?

04:44  10      **THE DEFENDANT:**  Yes, Your Honor.

11      **THE COURT:**  And I think, really, thinking out loud

12  whether or not company A knew exactly what you were doing or

13  not is not -- does not negate your own criminal conduct if, in

14  fact, you committed this crime.

04:44  15      Does that make sense?

16      **THE DEFENDANT:**  Yes, Your Honor.

17      **THE COURT:**  Okay.  So we're not going to go down that

18  path at the moment because what's important here is what your

19  own actions were vis-a-vis these victims.

04:44  20      Does that make sense?

21      **THE DEFENDANT:**  It does, Your Honor.  Yes.

22      **THE COURT:**  Okay.

23      So I gather this company A arranged, as you said, for

24  the J-1 visas for these two young women who came here from

04:45  25  Kazakhstan, and they came here thinking they were going to work

1  as a receptionist in your yoga studio.

2      Is that fair to say?

3      **THE DEFENDANT:**  Yes, Your Honor.

4      **THE COURT:**  And they got here on May 30th, 2011; is

04:45  5  that right?

6      **THE DEFENDANT:**  I believe so, yes.

7      **THE COURT:**  And it was only after they arrived here

8  that you told them that, in fact, they would not work as a

9  receptionist, but they would perform erotic massages for

04:45 10  clients or customers that you procured for them; is that right?

11      **THE DEFENDANT:**  Yes, Your Honor.

12      **THE COURT:**  Okay.  And you agree with what I see in

13  here that these two victims, had they known what the employment

14  was that they, in fact, were coming here for, they would not

04:46 15  have come to work at your -- to work for you that summer.

16      Do you agree with that?

17      **THE DEFENDANT:**  Well, apparently, they were already

18  sponsored.  So the company just asked me did I want to host

19  them.  It wasn't like they were not going to come apparently.

04:46 20  They were already, you know, approved to come.

21      **THE COURT:**  The point is that they left Kazakhstan

22  with the belief they were going to work as receptionists, that

23  they did not willingly come here to perform these erotic

24  massages.  They came here under false pretenses.

04:46 25      Is that fair to say?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  Okay.  Then I see also in the factual

3    proffer that as of June of 2011, I guess some people who were

4    working for you posted advertisements on Backpage.com offering

04:47  5    erotic massages and sex acts, and that those advertisements

6    were the vehicle to bring in customers, that victim one and two

7    then performed erotic massages on.  Is that true?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Okay.  And the money that the customers

04:47 10    paid them, some of it they turned over to you or to you and

11    your associates.  They didn't keep all the money themselves.

12              Is that accurate?

13              THE DEFENDANT:  Yes, Your Honor.

14              THE COURT:  So they were working for you.

04:47 15              Is that fair to say?

16              THE DEFENDANT:  Yes, Your Honor.

17              THE COURT:  And they continued doing this until law

18    enforcement learned of their circumstances and stopped what was

19    going on on August 4th of 2011; is that true?

04:47 20              THE DEFENDANT:  Yes, Your Honor.

21              THE COURT:  And I see here that you led this victim

22    one and two to believe that if they did not go along with this

23    employment that you had set up for them, that they would incur

24    serious harm.

04:48 25              That serious harm could be either psychological,

1  financial, or their reputations.  They understood from you that

2  if they didn't cooperate with you, there would be serious,

3  harmful consequences to them.

4          Do you agree with that?

04:48  5          **THE DEFENDANT:**  I mean, I'm going to have to say yes,

6  but I don't think they were ever -- there was never anything,

7  you know, psychological.  I mean, because I read that as well.

8  So I don't know how that psychological part came in there, but,

9  I mean, if...

04:48  10          **THE COURT:**  My understanding is that these young women

11  didn't want to be providing erotic massages, but they felt

12  compelled to do so.

13          Do you accept that that's true?  Or are you saying

14  that this is something that they consented to and they were

04:49  15  enthusiastic about?

16          **THE DEFENDANT:**  Okay.

17          **THE COURT:**  Am I right that there's an issue about

18  whether these young women consented to performing these erotic

19  massages?  Am I reading between the lines that perhaps the

04:49  20  defendant, Mr. Cooper, thinks that?

21          **THE DEFENSE:**  Judge, what's probably going through

22  Mr. Cooper's head is that these victims also -- there's a video

23  of them having fun at a strip club and doing their own thing on

24  the side.  So, obviously, they weren't, you know, tied up to

04:50  25  the bed and they weren't forced in that way.

1       However, according to the statute, yes, obviously,

2  there's a psychological aspect of it because they came here

3  under the pretenses of doing one thing, they end up doing

4  something else, and they didn't know anybody here.

04:50  5       So I think that as far as the statute goes, I think

6  Mr. Cooper should admit responsibility.

7       **THE COURT:**  Did -- in fact, did they not want to have

8  to perform these erotic massages?  Did they feel that this was

9  the only way they could -- this was part of the deal where they

04:50  10  had to stay here -- the only way to stay here was to do this?

11       **THE DEFENSE:**  Judge, the statute says force or fraud,

12  and I believe the government would go under the theory of

13  fraud, that they were induced to do these acts by fraud because

14  they were not told what they were going to be actually doing.

04:51  15  So it doesn't have to be force.

16       **THE COURT:**  But wasn't there an element, and I'm

17  sorry, I don't have in front of me Chapter 77 of Title 18.  But

18  I thought you said that the -- it's the government would have

19  to prove that Mr. Cooper led the victims to believe that if

04:51  20  they did not perform these services, they would suffer a

21  serious harm.

22       **THE DEFENSE:**  Yes, Your Honor.  And that serious harm

23  can be either psychological, financial, or reputational harm.

24  One of the allegations was that if they didn't do what they

04:51  25  were doing or they stopped, their families would find out about

1 it.

2          They're Muslim girls coming from Kazakhstan.  There's

3 an allegation that some of them have certain religious beliefs,

4 and everything they were doing was against those religious

04:52  5 beliefs.

6          **THE COURT:**  So, Mr. Cooper, did you -- perhaps with

7 others, but were you a part of leading them to believe that if

8 they didn't cooperate and perform these services, these erotic

9 massages, that this would become known to their family and be a

04:52 10 source of embarrassment or distress for them?

11          **THE DEFENDANT:**  Well, I mean, I have no contact and I

12 never met their families.

13          **THE COURT:**  I'm not asking that.  I'm asking if you

14 led them to believe --

04:52 15          Is that what you're saying, Mr. Grady, that what

16 Mr. --

17          **THE GOVERNMENT:**  Yes, I would say there's a couple of

18 things, Your Honor.  So first as to the second element, a

19 scheme or plan to cause the other person to believe that if the

04:52 20 services were not performed, they would incur serious harm.

21          So that scheme or plan can be bringing them into the

22 United States under fraudulent purposes and then once in the

23 United States not offering any other employment other than

24 erotic massages.

04:53 25          So the victims would incur financial harm in the sense

1  that they would have no ability to sustain themselves here in

2  the United States.  They came in to work for the defendant, but

3  without the work, any other work other than erotic massages,

4  they would incur financial harm because they had no way to

04:53  5  sustain themselves.

6        In addition, as far as reputational harm,

7  psychological harm, again, the government's understanding is

8  that these were Muslim girls who were particularly not

9  enthusiastic about these services because it went against their

04:53  10  faiths and that could -- if known to family and friends back in

11  Kazakhstan, that would make them not marriage material and

12  other things of that nature.

13        THE COURT:  But the element you have to prove -- let's

14  get real clear about this, about this.

04:53  15        Tell me that second element.

16        THE GOVERNMENT:  Yes, Your Honor.  So, for example,

17  the defendant obtained the labor and services of victim one and

18  victim two by a scheme or plan, and that scheme here was

19  bringing them into the United States under fraudulent

04:54  20  pretenses, defrauding not only them but also company A, which

21  of course would not approve a J-1 visa for students who would

22  be engaging in erotic massages.

23        So that's the scheme or plan, again, sort of

24  blindsiding them, if you will, having them show up to the

04:54  25  United States and then causing them to believe that if they did

1    not perform the labor and services, so if they did not perform

2    these erotic massages, they would suffer serious harm.  One of

3    those serious harm could be financial harm.

4         And so, again, they would have essentially no ability

04:54  5    to live here for that summer without some sort of work, some

6    sort of employment from the defendant.

7         And, again, they were living in the defendant's

8    apartment complex.  They were paying the defendant rent, and

9    they needed a way and ability to sustain themselves, at least

04:54  10   financially.

11        So, again, that would be an example of financial harm

12   and satisfying the second element.

13            THE COURT:  Okay.  Let me start.

14        Mr. Cooper, did you understand what Mr. Grady just

04:55  15   said?

16            THE DEFENDANT:  I do.

17            THE COURT:  Okay.  So do you agree that you brought

18   them here to provide these erotic massages under a false

19   pretense, they were misled into thinking they were coming to do

04:55  20   receptionist work?

21            THE DEFENDANT:  Yes, Your Honor.

22            THE COURT:  And then secondly, that they believed that

23   if they did not provide -- do the work that you had set up for

24   them, these erotic massages, that they would suffer serious

04:55  25   harm as defined by the law, and it could include simply the

financial harm of being all the way over here, not having any

other way to sustain themselves financially.  That could be one

kind of the serious harm.

Do you agree that that was, as you now understand it,

04:56   their belief?

**THE DEFENDANT:**  It could have been.  But in terms of

lodging, they never had to pay, you know, any rent because that

was something that I told CCI because they asked would they

have lodging, and I said yes.  And so they didn't have so pay.

04:56   So there was no -- no rent paid.

**THE COURT:**  Right.  So you were free rent.  So if they

didn't work for you, they would have to pay rent to somebody

else, presumably, to go live somewhere else, right?

**THE DEFENDANT:**  I don't -- I mean, apparently, they

04:56   had some friends in Orlando.  I don't know about -- but with

CCI, they asked me about where are they going to stay, and I

said I had an extra studio apartment that they were staying in.

**THE COURT:**  Okay.

I'm not going to be able to accept your guilty plea

04:56   unless, in fact, there is evidence to prove, and you agree that

this is so, that victim one and two believed that if they did

not perform these erotic massages, that they would suffer some

form of serious harm.

There are many ways that they might perceive

04:57   themselves as suffering serious harm.  We were talking about

one example.  The possibility that if they didn't work for you

providing erotic massages, they didn't have other work.  They

were living with you rent-free.  They would have to figure out

where to find a place to live, where to make money.  Didn't

04:57  have a job.

Do you acknowledge that those two victims understood

that if they didn't cooperate with your plan, they could suffer

serious harm?

**THE DEFENDANT:**  Okay.  Yes, Your Honor.

04:58  **THE COURT:**  This has to be because -- this can't be

because I'm forcing this on you.  I just need to be very clear

about that.  Because looking at you, I see what seems to me

some hesitation on your part.

Do you have a copy of the statute in front of you,

04:58  this 1589(a)(4)?

**THE GOVERNMENT:**  I do, Your Honor.

**THE COURT:**  Want to hand it to me?  I want to make

sure I'm not making it more -- I'm not trying to make it harder

than it is.

04:58  **THE GOVERNMENT:**  I just have my statute book.

**THE COURT:**  Let me see.  1589.

**THE GOVERNMENT:**  The only thing I would add, Your

Honor, is it continues that it's not of -- it's of a person of

a similar background to victims one and two under the similar

04:59  circumstances.  So we're talking about their particular

1  circumstances.

2          THE COURT:  Yes.  Their perception.

3          THE GOVERNMENT:  Exactly.  Their perception.  Exactly,

4  Your Honor.

04:59  5          THE COURT:  I'm going to read this to you again.

6  Okay.  This is 18 USC 1589, and this language is part of

7  defining the crime you're pleading guilty to.  Okay?

8          THE DEFENDANT:  Okay.

9          THE COURT:  And it says that where you obtained the

04:59  10  labor or services of a person, in this case these two young

11  women, and under subsection (a)(4) by means of a scheme, quote,

12  "intended to cause the person to believe."

13          So that's your intent to cause these two women to

14  believe that if they did not perform those services, in this

05:00  15  case the erotic massages, that they or someone else would

16  suffer serious harm.

17          So by pleading guilty, you're admitting to that.  And

18  if you're admitting to that, I need to know how you did that.

19  That's why we're talking about this.

05:01  20          Does that make sense?

21          THE DEFENDANT:  Yes, it does.

22          THE COURT:  So it's about whether you --

23          Mr. Grady, are you comfortable with what I just said?

24          THE GOVERNMENT:  Yes, Your Honor.  Exactly.

05:01  25          THE COURT:  Ms. Bozanic?

1          **THE DEFENSE:**  Yes, Your Honor.

2          **THE COURT:**  Okay.

3          So the question right now on the table is:  Did you

4    intend to cause these two women to believe that if they did not

05:01  5    do the work you had set up for them, that they would suffer

6    serious harm, serious harm being defined by how it looks to

7    them, a young Muslim woman from Kazakhstan; not you,

8    Mr. Cooper, from Miami Beach.

9          Right?  That there has to be evidence that a jury

05:01 10   could find that you intended them to believe that some serious

11   harm would happen, which in their minds would be serious harm.

12   You may think it's no big deal, but to them, it could be

13   serious harm.

14         Does that make sense?

05:02 15         **THE DEFENDANT:**  It does, Your Honor.  Yes.

16         **THE COURT:**  Okay.  So, first of all, are you

17   comfortable with that statement?  Is that -- does that describe

18   what you did?

19         **THE DEFENDANT:**  No.

05:02 20         **THE COURT:**  If it doesn't, you shouldn't plead guilty.

21   You should have to go to trial.  And if you need to think about

22   this and you're not ready to plead guilty today, I'll be happy

23   to see you another day.  Really.

24         But if you plead guilty today, we're done.  So that's

05:02 25   why I'm spending the time with you.

1        You want to talk with your lawyer for a minute?

2            **THE DEFENDANT:**  Yeah, I would like to do that.

3            **THE COURT:**  Okay.

4            **THE DEFENDANT:**  Thank you, Your Honor.

05:03  5            (Thereupon, there was a brief pause.)

6            **THE COURT:**  Mr. Grady, I'm just double checking.  I'm

7    not making this bigger than it is, right?

8            **THE GOVERNMENT:**  No.  No, you're perfectly -- the

9    government of the United States has the same understanding,

05:03 10   Your Honor.

11           **THE COURT:**  Okay.  Okay.

12           So let me check in with you, Ms. Bozanic.

13           **THE DEFENSE:**  Yes, Your Honor.

14           **THE COURT:**  Where do you think we stand?

05:04 15           **THE DEFENSE:**  Judge, I think my client is -- has a

16   different belief.  He believes that these victims could have

17   gone to Orlando to stay with their family.  They wouldn't have

18   suffered financial harm.

19           What I'm trying to explain to him that this is not

05:04 20   from his perspective, and that's not reasonable to believe that

21   they could go somewhere with no money.  He said, well, I gave

22   them money.  Well, if they didn't work for you, you wouldn't

23   have given them money.  So I think that's where he's not

24   understanding.

05:04 25           We went over this before.  I think Your Honor going

1  into details and breaking it down maybe confused him a little

2  bit.  I just spoke to him again, and I think he understands,

3  and I think he's ready to proceed.

4         **THE COURT:**  Okay.

05:04  5         So, Mr. Cooper, what are your thoughts about where

6  we're at right now?

7         **THE DEFENDANT:**  Well, the whole thing about the Muslim

8  thing with CCI, you know, I don't understand why the Muslim

9  thing is, like, becoming such a -- you know, it's being

05:05  10  mentioned, first of all.  They were understanding that they

11  were going to come to work for a yoga and wellness retreat,

12  which is actually Hinduism.  So if they're Muslim and they had

13  such a strong ferment in, you know, like what would a Muslim

14  do, we can't do this and that, then why did they even agree to

05:05  15  come to work for a company that's called Janardana Yoga and

16  Wellness.  Clearly, that's Hinduism.

17         So I don't understand how the Muslim thing now is all

18  of a sudden becoming a part of this whole thing.  You know,

19  because you mentioned, you know, they're from Kazakhstan which

05:05  20  is a Muslim country, and Miami Beach is the USA, but they

21  agreed to come.

22         So the Muslim thing, I don't understand why is that

23  relevant.  Because CCI never mentioned, oh, well, we have some

24  Muslim girls coming and that's it.  If that's an issue, then

05:06  25  maybe you should decide because they're Muslim.  That was never

1  mentioned.

2       So the whole thing is -- it's kind of a -- you know,

3  how that Muslim all of a sudden is becoming an issue.

4       **THE COURT:**  Because the law states that the belief of

05:06  5  the victim that she would suffer serious harm is from her

6  perspective.  It's not from yours.  It's from the victim's

7  perspective.

8       She was a young woman, a student, in a foreign country

9  for a summer, and she's of the Muslim faith which apparently

05:06  10  has particularly -- I'm no expert in it, but apparently I think

11  we have a general understanding is particularly strong beliefs

12  that performing work like the work you set them up to do is

13  against the faith and is immoral.

14       It's not about whether they were coming to work for a

05:07  15  yoga studio as a receptionist because it turns out they

16  weren't.  That was a lie from what you've told me.  They were

17  coming for you to set them up in this prostitution-like

18  business.

19       So the point is it's not your set of morals or

05:07  20  beliefs, it's theirs, what was their belief, their reasonable

21  belief whether they would suffer serious harm.

22       Look, I feel like I'm kind of getting involved, and it

23  almost feels like I'm arguing with you about this.  And that's

24  not what we're here to do.

05:08  25       I don't think you're ready to plead guilty to this

1  charge today, and it is my job to make sure that you plead

2  guilty only if, among other things, that's what you're ready to

3  do and admit the charge.  And I'm hearing some pretty

4  significant hesitation on this part of the accusation.  You can

05:08  5  go to a jury and tell them your view about this and put on a

6  defense and see what they think.  You know.

7      So, listen, I'd like for us all to be finished, but

8  perhaps the best thing to do is to adjourn, and if you want to

9  think about it and talk to your lawyer and come back, I'll be

05:09  10  happy to do this again.

11      Unless you feel quite certain that you're comfortable

12  admitting to this, but I'm not feeling really great about the

13  record we have at the moment.

14      So, Counsel, any different thoughts than me -- than

05:09  15  what I have right now?

16      **THE DEFENSE**:  Judge, my client keeps saying that he's

17  ready to proceed.  I don't even know what to suggest to the

18  Court.  I know the record is not very clear.  If the Court

19  wants to attempt one more time to speak to him or we can

05:09  20  recess.

21      **THE COURT**:  Well, it sounds like Mr. Cooper is saying

22  that he doesn't believe that these two young women -- that his

23  actions were intended to cause them to believe that they would

24  suffer serious consequences, or serious harm as the statute

05:10  25  calls it, if they didn't go along with his plan.  It sounds

1  like he's just not comfortable with that idea.

2          THE DEFENSE:  I understand, Judge.

3          I mean, I think that Mr. Cooper is looking at it from

4  his very different point of view, and what I was trying to

05:10  5  explain is that it is the believe of the victims and they do

6  think differently.  They have a different culture; that's why

7  it's important.

8          So I just tried to explain that to Mr. Cooper just a

9  minute ago, and he told me that he understands.

05:10  10         Mr. Cooper?

11         THE DEFENDANT:  Okay.  Well, we can proceed, Your

12  Honor, if you want -- if you're okay with that.

13         THE COURT:  Well, so the question is:  Did you put

14  this -- together this plan that we have discussed to get these

05:11  15  two young women over here intending them to believe that if

16  they did not perform the erotic massages that you lined up for

17  them, that they would suffer some sort of serious harm.

18         Is that true or not?

19         THE DEFENDANT:  Yes.

05:11  20         THE COURT:  Why do you say it's true?  I need to know

21  in your own words.  I'm not putting words in your mouth.

22         THE DEFENDANT:  Well, you're saying because their

23  culture.  Now that the Muslim thing came up that their culture,

24  I guess was, you know, they were so, you know, against doing

05:11  25  it, but then, you know, there was social media of them going

1    out and, you know, meeting guys and hanging out and like this.

2         And, you know, so I don't know if, you know, one thing

3    is I saw, you know, some discovery of them apparently having a

4    ball at Miami Beach, and then on the other side, it's just

05:12  5    saying that this is against their culture.  So I'm --

6         **THE COURT**:  So this is clear to me.  I'm not going to

7    recommend that -- I'm not going to ask you how you plead to

8    these charges because based on what you're telling me, you're

9    not able to admit to each of the elements of the crimes that

05:12 10    you're being charged with.

11         There is no penalty to you in having been here today.

12    If you -- after consulting with your attorney and assuming that

13    this plea agreement is still available to you, if you do want

14    to plead guilty, your lawyer can call me and we'll reschedule

05:12 15    this.  I'll be happy to go through this again with you.

16         But it would only be with your really having some

17    understanding about what that aspect of the criminal -- your

18    criminal conduct is and your being able to tell me in your own

19    words why your conduct meets that definition of the crime.

05:13 20         So you have more chance to think about it, and your

21    lawyers will know where to find me.  And at this point, we will

22    be adjourned.  So I'll give these back to the parties.

23         Right.  Well, I haven't -- there's been an attempt --

24    right.  My clerk is wanting our record to be clear.  She's my

05:13 25    lawyer.  Yeah, I'm not accepting the defendant's attempt to

1    plead guilty at this point.  Okay.  Thank you.

2

3              (Thereupon, the above hearing was concluded.)

4

5                        *          *          *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2

3          I hereby certify that the foregoing is an accurate

4     transcription of the proceedings in the above-entitled

5     matter.

6

8     04/06/2022          _____

9     DATE COMPLETED          GIZELLA BAAN-PROULX, RPR, FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## $

**$10,000** [4] - 21:25, 22:4, 23:25, 24:5
**$200** [1] - 25:4
**$250,000** [1] - 21:18
**$500,000** [1] - 21:19

## '

**'11** [1] - 15:3

## 0

**0** [2] - 20:24, 21:17
**04/06/2022** [1] - 55:8

## 1

**12th** [1] - 12:19
**14** [1] - 1:5
**1589** [2] - 45:21, 46:6
**1589(a)(4** [1] - 45:15
**1590** [2] - 13:7, 30:21
**1593** [3] - 22:11, 22:12, 24:11
**16** [1] - 27:13
**16-20345** [1] - 2:4
**16-CR-20345-KMM-1** [1] - 1:2
**18** [5] - 13:7, 22:11, 30:21, 40:17, 46:6

## 2

**2** [5] - 9:10, 10:5, 10:9, 15:2, 15:3
**20** [3] - 20:25, 21:2
**20004** [1] - 1:14
**2010** [1] - 15:3
**2011** [11] - 11:19, 12:19, 12:20, 20:2, 20:3, 33:11, 33:21, 33:25, 34:12, 37:4, 38:3, 38:19
**2016** [1] - 1:5
**202** [1] - 1:14
**2259** [1] - 24:12
**299** [1] - 1:21

## 3

**3** [1] - 12:15
**305** [1] - 1:18
**30th** [2] - 11:19, 37:4
**33131** [1] - 1:17
**33301** [1] - 1:22
**353-1216** [1] - 1:14

## 4

**4** [1] - 13:16
**40** [1] - 21:3
**46** [1] - 4:16

**48** [1] - 4:25
**4th** [2] - 12:19, 38:19

## 5

**5343** [1] - 1:13

## 6

**601** [1] - 1:13
**643-1040** [1] - 1:18

## 7

**769-5568** [1] - 1:22
**77** [1] - 40:17

## 8

**800** [1] - 1:17

## 9

**954** [1] - 1:22

## A

**a)(4** [1] - 46:11
**ability** [3] - 42:1, 43:4, 43:9
**able** [4] - 26:24, 44:19, 53:9, 53:18
**above-entitled** [1] - 55:4
**accept** [4] - 17:12, 30:16, 39:13, 44:19
**acceptable** [1] - 8:3
**accepting** [2] - 27:10, 53:25
**according** [1] - 40:1
**accurate** [7] - 14:15, 16:8, 17:24, 18:3, 18:17, 38:12, 55:3
**accusation** [1] - 51:4
**accused** [1] - 5:24
**acknowledge** [1] - 45:6
**acknowledging** [1] - 27:16
**actions** [2] - 36:19, 51:23
**acts** [7] - 9:14, 9:15, 9:18, 10:17, 12:5, 38:5, 40:13
**add** [2] - 24:10, 45:22
**added** [1] - 9:13
**addition** [2] - 14:3, 42:6
**additional** [2] - 4:3, 27:15
**adjourn** [1] - 51:8
**adjourned** [1] - 53:22
**adjusted** [2] - 25:16, 27:9
**admit** [3] - 40:6, 51:3, 53:9
**admitting** [4] - 18:9, 46:17, 46:18, 51:12
**advance** [2] - 10:24, 11:4
**advantage** [1] - 32:3
**advertisements** [2] - 38:4, 38:5
**advertising** [1] - 34:13

**advice** [1] - 26:23
**afford** [1] - 6:22
**afternoon** [2] - 2:8, 2:11
**ago** [1] - 52:9
**agree** [15] - 5:10, 14:14, 17:3, 19:8, 22:17, 28:20, 29:5, 35:18, 37:12, 37:16, 39:4, 43:17, 44:4, 44:20, 49:14
**agreeable** [1] - 5:11
**agreed** [2] - 28:25, 49:21
**agreeing** [3] - 3:13, 3:15, 27:5
**agreement** [16] - 8:24, 9:2, 9:5, 17:8, 18:19, 18:25, 19:9, 19:14, 20:21, 21:24, 22:21, 23:22, 28:8, 28:10, 29:14, 53:13
**ahead** [4] - 3:2, 13:9, 22:20, 30:19
**alcohol** [2] - 4:22, 5:1
**allegation** [1] - 41:3
**allegations** [1] - 40:24
**allow** [3] - 20:23, 30:14, 32:8
**allows** [1] - 31:20
**almost** [1] - 50:23
**alone** [1] - 29:25
**ambiguity** [1] - 35:25
**America** [1] - 2:4
**AMERICA** [2] - 1:4, 1:13
**amount** [7] - 21:17, 21:24, 22:4, 22:5, 24:1, 24:4, 24:12
**announcing** [1] - 27:16
**apartment** [2] - 43:8, 44:17
**appearances** [1] - 2:7
**apply** [1] - 25:14
**appoint** [1] - 6:23
**appreciate** [1] - 11:11
**appropriate** [1] - 32:8
**approve** [1] - 42:21
**approved** [1] - 37:20
**arguing** [1] - 50:23
**arraign** [1] - 2:24
**arraigned** [1] - 3:20
**arranged** [1] - 36:23
**arrival** [5] - 10:1, 10:11, 11:21, 12:1, 12:8
**arrived** [1] - 37:7
**aspect** [2] - 40:2, 53:17
**assessment** [1] - 25:4
**assets** [5] - 29:1, 29:2, 29:6, 29:7, 29:8
**assist** [1] - 29:1
**assistance** [1] - 6:20
**associates** [1] - 38:11
**ASSOCIATES** [1] - 1:16
**assuming** [1] - 53:12
**assurance** [1] - 22:23

**assure** [3] - 4:11, 23:8, 28:18
**attempt** [1] - 51:19, 53:23, 53:25
**attention** [1] - 11:17
**attorney** [5] - 3:16, 4:10, 5:20, 6:20, 53:12
**attorneys** [2] - 6:5, 6:21
**August** [3] - 12:19, 20:3, 38:19
**AUSA** [1] - 1:12
**authority** [3] - 21:10, 21:16, 21:20
**available** [1] - 53:13
**Avenue** [1] - 1:17

## B

**BAAN** [2] - 1:20, 55:9
**BAAN-PROULX** [2] - 1:20, 55:9
**bachelor's** [1] - 4:19
**background** [1] - 45:24
**Backpage** [1] - 34:14
**Backpage.com** [1] - 38:4
**ball** [1] - 53:4
**based** [2] - 9:24, 53:8
**Beach** [3] - 33:17, 47:8, 49:20, 53:4
**become** [1] - 41:9
**becoming** [3] - 49:9, 49:18, 50:3
**bed** [1] - 39:25
**BEFORE** [1] - 1:9
**begins** [1] - 11:18
**behalf** [2] - 2:9, 2:12
**belief** [6] - 37:22, 44:5, 48:16, 50:4, 50:20, 50:21
**beliefs** [4] - 41:3, 41:5, 50:11, 50:20
**believes** [2] - 17:19, 48:16
**below** [1] - 9:24
**best** [1] - 51:8
**between** [6] - 13:12, 17:10, 23:22, 26:2, 36:3, 39:19
**beyond** [4] - 7:5, 8:1, 28:12, 30:10
**big** [1] - 47:12
**bigger** [1] - 48:7
**bit** [5] - 10:13, 10:21, 23:18, 31:17, 49:2
**blindsiding** [1] - 42:24
**Blvd** [1] - 1:21
**book** [1] - 45:20
**born** [1] - 8:20
**bottom** [2] - 10:5, 12:15
**Bozanic** [2] - 2:12, 5:14, 13:13, 22:17, 46:25, 48:12
**BOZANIC** [2] - 1:16, 1:16
**break** [2] - 30:6, 31:22

**breaking** [1] - 49:1
**Brickell** [1] - 1:17
**brief** [1] - 48:5
**briefly** [1] - 16:10
**bring** [3] - 7:13, 11:17, 38:6
**bringing** [2] - 41:21, 42:19
**brought** [1] - 43:17
**Broward** [1] - 1:21
**business** [16] - 12:6, 12:11, 14:25, 15:4, 15:9, 15:12, 16:6, 16:23, 17:8, 17:17, 17:23, 33:14, 33:24, 50:18
**BY** [1] - 1:20

## C

**calculation** [3] - 25:13, 25:15, 27:6
**care** [2] - 24:14, 24:16
**CASE** [1] - 1:2
**case** [8] - 2:3, 2:4, 5:7, 21:1, 25:14, 30:15, 46:10, 46:15
**casual** [1] - 33:18
**causing** [1] - 42:25
**CCI** [8] - 32:22, 32:23, 33:19, 33:20, 44:8, 44:16, 49:8, 49:23
**certain** [3] - 30:5, 41:3, 51:11
**certainly** [4] - 5:19, 5:23, 6:1, 34:12
**certify** [1] - 55:3
**chance** [3] - 16:13, 18:13, 53:20
**CHANGE** [1] - 1:8
**change** [2] - 9:23, 10:18
**changed** [6] - 9:25, 10:14, 10:16, 11:19, 11:22, 12:16
**changes** [4] - 9:6, 11:3, 12:13, 15:14
**Chapter** [1] - 40:17
**charge** [5] - 3:15, 3:16, 20:11, 51:1, 51:3
**charged** [1] - 53:10
**charges** [7] - 3:22, 7:4, 8:4, 20:1, 20:2, 20:21, 53:8
**check** [5] - 9:2, 13:20, 17:1, 17:14, 48:12
**checking** [1] - 48:6
**Chicago** [1] - 32:9
**choice** [2] - 6:2, 7:22
**choices** [1] - 8:5
**CHRIS** [1] - 1:9
**circumstances** [4] - 26:10, 38:18, 45:25, 46:1
**civil** [2] - 8:14, 8:18
**Civil** [1] - 2:9
**clear** [6] - 17:13, 42:14, 45:11, 51:18, 53:6, 53:24

**clearly** [1] - 49:16
**clerk** [1] - 53:24
**client** [6] - 3:6, 11:6, 15:24, 16:13, 48:15, 51:16
**clients** [1] - 37:10
**clients'** [1] - 15:18
**club** [1] - 39:23
**co** [1] - 2:12
**co-counsel** [1] - 2:12
**college** [1] - 33:23
**comfortable** [6] - 32:11, 36:9, 46:23, 47:17, 51:11, 52:1
**coming** [8] - 33:7, 35:8, 37:14, 41:2, 43:19, 49:24, 50:14, 50:17
**commercial** [4] - 9:15, 9:18, 10:16, 12:5
**commit** [2] - 17:6, 25:9
**committed** [2] - 28:4, 36:14
**company** [19] - 15:11, 32:9, 32:10, 32:14, 33:4, 33:19, 33:20, 34:21, 35:7, 35:14, 35:19, 36:1, 36:3, 36:5, 36:12, 36:23, 37:18, 42:20, 49:15
**company's** [1] - 32:23
**compare** [2] - 10:19, 11:2
**compelled** [1] - 39:12
**COMPLETED** [1] - 55:9
**completely** [2] - 23:22, 24:22
**complex** [1] - 43:4
**complies** [4] - 13:10, 13:23, 13:24, 16:12
**concern** [2] - 18:15, 19:17
**concerned** [1] - 18:16
**concerns** [1] - 18:2
**concluded** [1] - 54:3
**conduct** [7] - 23:17, 27:11, 29:3, 30:5, 36:13, 53:18, 53:19
**confuse** [1] - 20:17
**confused** [1] - 49:1
**consecutively** [3] - 21:1, 21:13, 21:18
**consented** [2] - 39:14, 39:18
**consequences** [3] - 18:10, 39:3, 51:24
**consider** [1] - 26:4
**considers** [1] - 25:5
**consisting** [1] - 15:17
**consulting** [1] - 53:12
**contact** [5] - 32:22, 32:23, 33:19, 33:20, 41:11
**contacted** [1] - 32:15, 33:22
**continue** [2] - 16:20, 16:22
**continued** [1] - 38:17

**continues** [1] - 45:23
**continuing** [1] - 12:19
**contract** [2] - 28:10, 28:11
**contrary** [1] - 20:9
**contrast** [1] - 10:19
**convince** [1] - 29:21
**COOPER** [3] - 1:6, 1:16, 2:18
**Cooper** [26] - 2:4, 2:12, 2:15, 2:24, 3:11, 5:12, 5:19, 8:10, 9:2, 14:1, 22:20, 24:19, 31:15, 35:25, 36:9, 39:20, 40:6, 40:19, 41:6, 43:14, 47:8, 49:5, 51:21, 52:3, 52:8, 52:10
**Cooper's** [2] - 16:7, 39:22
**cooperate** [4] - 14:20, 39:2, 41:8, 45:7
**cooperation** [1] - 29:4
**copy** [11] - 8:24, 9:1, 10:20, 10:25, 11:13, 11:14, 14:1, 14:5, 18:20, 18:21, 45:14
**correct** [11] - 3:1, 3:23, 9:21, 12:14, 13:11, 15:20, 24:9, 33:12, 34:1, 35:9, 35:10
**corresponds** [1] - 25:16
**costs** [1] - 24:16
**Counsel** [1] - 51:14
**counsel** [6] - 2:7, 2:12, 6:23, 7:5, 9:2, 11:6
**count** [2] - 20:23, 21:16
**Count** [2] - 21:2, 21:3
**countries** [1] - 31:21
**country** [6] - 8:20, 22:8, 31:21, 32:9, 49:20, 50:8
**County** [1] - 20:3
**couple** [1] - 41:17
**course** [1] - 42:21
**COURT** [175] - 1:1, 1:10, 2:6, 2:10, 2:14, 2:22, 3:2, 3:8, 3:10, 3:20, 3:25, 4:6, 4:14, 4:17, 4:20, 4:24, 5:3, 5:6, 5:14, 5:16, 5:18, 6:7, 6:10, 6:19, 7:2, 7:10, 7:21, 8:8, 8:12, 8:20, 8:22, 9:1, 9:8, 9:17, 9:20, 9:22, 10:4, 10:7, 10:9, 10:12, 10:16, 10:23, 11:11, 11:15, 11:21, 11:23, 12:12, 12:15, 13:9, 13:13, 13:15, 13:25, 14:11, 14:14, 14:17, 14:22, 15:2, 15:7, 15:10, 15:13, 15:17, 15:25, 16:2, 16:11, 16:17, 16:21, 17:13, 17:21, 18:1, 18:5, 18:19, 18:22, 19:2, 19:5, 19:8, 19:11, 19:22, 19:25, 20:14, 20:20, 21:9, 21:16, 21:22, 22:7, 22:16, 22:20, 23:15, 24:8, 24:18,

24:21, 24:25, 25:3, 25:24, 26:10, 26:19, 27:3, 28:8, 28:17, 28:25, 29:13, 29:18, 29:24, 30:2, 30:19, 31:8, 31:13, 32:2, 32:6, 32:13, 32:18, 32:25, 33:3, 33:6, 33:10, 33:13, 33:22, 34:2, 34:8, 34:11, 34:17, 34:19, 34:21, 34:24, 35:1, 35:5, 35:7, 35:11, 35:14, 35:23, 36:8, 36:11, 36:17, 36:22, 37:4, 37:7, 37:12, 37:21, 38:2, 38:9, 38:14, 38:17, 38:21, 39:10, 39:17, 40:7, 40:16, 41:6, 41:13, 42:13, 43:13, 43:17, 43:22, 44:11, 44:18, 45:10, 45:17, 45:21, 46:2, 46:5, 46:9, 46:22, 46:25, 47:2, 47:16, 47:20, 48:3, 48:6, 48:11, 48:14, 49:4, 50:4, 51:21, 52:13, 52:20, 53:6
**Court** [10] - 1:20, 6:23, 10:15, 10:21, 12:7, 19:12, 25:5, 30:13, 51:18
**court** [1] - 2:2
**courtroom** [2] - 2:19, 7:3
**COURTROOM** [1] - 1:9
**credit** [2] - 27:10, 27:16
**crime** [9] - 4:3, 17:6, 20:12, 28:4, 30:7, 32:2, 36:14, 46:7, 53:19
**crimes** [5] - 8:12, 20:12, 25:10, 30:4, 53:9
**criminal** [6] - 2:5, 8:4, 29:3, 36:13, 53:17, 53:18
**cross** [2] - 13:7, 24:11
**culture** [4] - 52:6, 52:23, 53:5
**current** [1] - 6:21
**custody** [1] - 4:24
**customers** [4] - 15:20, 37:10, 38:6, 38:9
**cut** [1] - 35:22

## D

**Dade** [1] - 20:3
**DATE** [1] - 55:9
**date** [2] - 14:8, 25:3
**dated** [1] - 14:8
**DC** [1] - 1:14
**deal** [2] - 40:9, 47:12
**decide** [5] - 3:14, 6:16, 24:1, 24:4, 49:25
**decided** [1] - 25:5
**decision** [2] - 27:16, 29:24
**defend** [3] - 7:22, 8:3, 8:6
**defendant** [19] - 1:6, 11:23, 12:1, 12:3, 12:20, 13:1, 22:5,

22:15, 30:22, 30:24, 31:4,
31:8, 36:4, 36:5, 39:20, 42:2,
42:17, 43:6, 43:8
   **DEFENDANT** [118] - 1:16,
2:21, 3:19, 3:24, 4:5, 4:13,
4:16, 4:19, 4:23, 5:2, 5:5,
5:13, 6:6, 6:9, 6:18, 7:1, 7:9,
7:20, 8:7, 8:11, 8:19, 8:21,
14:10, 14:13, 14:16, 14:18,
14:24, 15:6, 15:8, 15:11,
15:16, 16:19, 17:12, 17:25,
18:4, 18:18, 18:21, 19:1,
19:4, 19:7, 19:10, 19:21,
19:24, 20:13, 20:19, 21:8,
21:15, 21:21, 23:14, 24:7,
24:20, 24:24, 25:2, 25:23,
26:9, 26:18, 27:2, 28:7,
28:16, 28:24, 29:12, 29:17,
29:23, 30:1, 30:18, 32:1,
32:5, 32:12, 32:15, 32:20,
33:2, 33:5, 33:9, 33:12,
33:15, 34:1, 34:3, 34:10,
34:16, 34:18, 34:20, 34:23,
34:25, 35:4, 35:6, 35:10,
35:13, 35:16, 36:10, 36:16,
36:21, 37:3, 37:6, 37:11,
37:17, 38:1, 38:8, 38:13,
38:16, 38:20, 39:5, 39:16,
41:11, 43:16, 43:21, 44:6,
44:14, 45:9, 46:8, 46:21,
47:15, 47:19, 48:2, 48:4,
49:7, 52:11, 52:19, 52:22
   **defendant's** [5] - 10:3,
12:6, 12:11, 43:7, 53:25
   **defense** [2] - 7:17, 51:6
   **DEFENSE** [22] - 2:11, 3:3,
3:9, 5:15, 8:25, 11:5, 11:13,
13:14, 13:24, 15:23, 16:1,
16:9, 16:12, 22:19, 39:21,
40:11, 40:22, 47:1, 48:13,
48:15, 51:16, 52:2
   **defenses** [1] - 5:25
   **defined** [6] - 9:12, 9:20,
15:13, 36:7, 43:25, 47:6
   **defining** [1] - 46:7
   **definition** [9] - 9:13, 16:5,
16:14, 16:15, 16:17, 16:24,
17:15, 17:17, 53:19
   **defrauding** [1] - 42:20
   **degree** [2] - 4:19, 14:21
   **Department** [3] - 1:13,
31:19, 32:7
   **dependency** [1] - 4:21
   **DEPUTY** [1] - 2:3
   **deputy** [1] - 2:19
   **describe** [3] - 20:15, 23:19,
47:17
   **described** [2] - 19:18, 31:6
   **describes** [1] - 30:5
   **description** [2] - 16:2, 16:3

   **details** [1] - 49:1
   **different** [6] - 16:14, 23:18,
48:16, 51:14, 52:4, 52:6
   **differently** [2] - 20:15, 52:6
   **direct** [1] - 9:9
   **disappointed** [1] - 26:22
   **disclosed** [1] - 22:24
   **discovery** [3] - 3:6, 3:9,
53:3
   **discuss** [3] - 5:25, 6:1, 6:3
   **discussed** [1] - 52:14
   **discussion** [1] - 14:22
   **disgorge** [1] - 22:14
   **disregarded** [1] - 31:5
   **distress** [1] - 41:10
   **DISTRICT** [3] - 1:1, 1:1,
1:10
   **Division** [1] - 2:9
   **document** [11] - 3:16, 3:22,
14:6, 14:14, 17:4, 17:22,
18:2, 18:14, 18:22, 19:6,
19:18
   **documents** [3] - 9:3, 11:2,
19:12
   **dollars** [1] - 21:17
   **done** [2] - 29:21, 47:24
   **double** [1] - 48:6
   **doubt** [3] - 7:6, 8:2, 30:10
   **down** [6] - 4:9, 23:22,
24:22, 30:6, 36:17, 49:1
   **drugs** [2] - 4:21, 4:25
   **dry** [1] - 35:22
   **due** [1] - 24:12
   **duly** [1] - 2:19
   **during** [1] - 31:22
   **duty** [1] - 4:1

## E

   **e-mail** [2] - 11:6, 11:7
   **e-mailed** [3] - 9:3, 10:15,
35:19
   **early** [1] - 27:17
   **easily** [1] - 11:15
   **East** [1] - 1:21
   **educated** [1] - 23:6
   **education** [1] - 4:17
   **educational** [1] - 31:23
   **either** [4] - 16:8, 17:8,
38:25, 40:23
   **ejaculation** [1] - 15:19
   **element** [8] - 30:22, 30:24,
31:4, 40:16, 41:18, 42:13,
42:15, 43:12
   **elements** [4] - 30:3, 30:6,
30:21, 53:9
   **eliminated** [1] - 9:14
   **elsewhere** [2] - 20:3, 22:21
   **embarrassment** [1] - 41:10
   **emphasize** [1] - 25:18

   **employees** [1] - 15:21
   **employment** [5] - 12:4,
37:13, 38:23, 41:23, 43:6
   **end** [4] - 9:13, 25:15, 29:25,
40:3
   **enforcement** [1] - 38:18
   **engage** [2] - 20:9, 28:3
   **engaging** [3] - 15:21,
22:13, 42:22
   **enter** [1] - 3:5
   **entered** [1] - 29:5
   **enthusiastic** [2] - 39:15,
42:9
   **entire** [2] - 22:14, 29:14
   **entirely** [1] - 27:22
   **entitled** [1] - 55:4
   **environment** [1] - 33:18
   **erotic** [32] - 9:12, 9:13,
9:15, 9:20, 10:2, 10:17, 12:5,
12:10, 15:13, 17:15, 20:9,
22:14, 35:12, 36:6, 37:9,
37:23, 38:5, 38:7, 39:11,
39:18, 40:8, 41:8, 41:24,
42:3, 42:22, 43:2, 43:18,
43:24, 44:22, 45:2, 46:15,
52:16
   **error** [1] - 11:16
   **ESQ** [1] - 1:16
   **essentially** [2] - 22:12, 43:4
   **estimate** [2] - 22:3, 23:24
   **estimates** [1] - 26:22
   **evidence** [7] - 3:15, 5:24,
7:12, 7:23, 30:14, 44:20,
47:9
   **exactly** [8] - 10:10, 11:22,
11:25, 14:5, 36:12, 46:3,
46:24
   **example** [12] - 15:4, 22:7,
24:15, 25:20, 26:4, 26:6,
26:13, 26:17, 28:3, 42:16,
43:11, 45:1
   **existed** [1] - 12:3
   **expenses** [1] - 22:8
   **experienced** [1] - 23:16
   **expert** [1] - 50:10
   **explain** [4] - 25:21, 48:19,
52:5, 52:8
   **extent** [1] - 31:15
   **extra** [2] - 11:13, 44:17

## F

   **face** [1] - 20:22
   **fact** [12] - 12:3, 17:5, 17:7,
23:11, 30:14, 34:19, 35:11,
36:14, 37:8, 37:14, 40:7,
44:20
   **factual** [16] - 8:23, 9:6,
9:10, 9:16, 10:24, 14:1, 14:9,
15:14, 17:5, 17:16, 18:2,

30:11, 31:14, 35:17, 36:7,
38:2
   **fair** [9] - 17:18, 17:19,
29:24, 32:4, 35:15, 36:4,
37:2, 37:25, 38:15
   **faith** [2] - 50:9, 50:13
   **faiths** [1] - 42:10
   **false** [3] - 35:1, 37:24,
43:18
   **falsely** [1] - 35:7
   **familiar** [2] - 32:3, 32:13
   **families** [2] - 40:25, 41:12
   **family** [3] - 41:9, 42:10,
48:17
   **far** [4] - 17:21, 32:11, 40:5,
42:6
   **faster** [1] - 31:17
   **fault** [1] - 11:10
   **favorable** [4] - 27:6, 27:19,
27:23, 28:5
   **FCRR** [2] - 1:20, 55:9
   **felonies** [1] - 8:13
   **felony** [1] - 8:14
   **felt** [1] - 39:11
   **ferment** [1] - 49:13
   **few** [1] - 15:1
   **fewer** [2] - 26:4, 26:14
   **figure** [1] - 45:3
   **filed** [1] - 19:12
   **final** [1] - 26:24
   **financial** [8] - 39:1, 40:23,
41:25, 42:4, 43:3, 43:11,
44:1, 48:18
   **financially** [2] - 43:10, 44:2
   **fine** [3] - 18:18, 21:17,
21:19
   **finished** [1] - 51:7
   **firearm** [1] - 8:16
   **first** [12] - 2:24, 6:14, 9:10,
12:2, 14:24, 15:3, 19:25,
27:8, 30:22, 41:18, 47:16,
49:10
   **fit** [1] - 16:5
   **five** [4] - 18:22, 26:2, 26:5,
26:14
   **five-page** [1] - 18:22
   **FL** [2] - 1:17, 1:22
   **FLORIDA** [1] - 1:1
   **follow** [3] - 19:15, 26:11,
28:20
   **following** [2] - 2:2, 27:19
   **follows** [1] - 2:20
   **FOR** [2] - 1:12, 1:16
   **force** [2] - 40:11, 40:15
   **forced** [2] - 20:7, 39:25
   **forcing** [1] - 45:11
   **foregoing** [1] - 55:3
   **foreign** [1] - 50:8
   **forfeiture** [3] - 29:1, 29:8,

29:9
  **form** [2] - 4:21, 44:23
  **formal** [1] - 3:4
  **Fort** [1] - 1:22
  **four** [4] - 14:6, 26:2, 26:4, 26:14
  **four-page** [1] - 14:6
  **fraud** [3] - 40:11, 40:13
  **fraudulent** [2] - 41:22, 42:19
  **free** [3] - 28:12, 44:11, 45:3
  **friend** [4] - 32:20, 33:16, 33:17, 33:18
  **friends** [2] - 42:10, 44:15
  **front** [5] - 2:23, 14:2, 14:4, 40:17, 45:14
  **full** [4] - 9:10, 9:25, 10:7, 24:12
  **fun** [1] - 39:23
  **furtherance** [3] - 10:3, 12:6, 12:10
  **future** [1] - 9:14

**G**

  **gather** [4] - 25:9, 32:6, 32:13, 36:23
  **general** [2] - 23:24, 50:11
  **generally** [1] - 23:17
  **girls** [3] - 41:2, 42:8, 49:24
  **given** [1] - 48:23
  **GIZELLA** [2] - 1:20, 55:9
  **gizella_baan** [1] - 1:23
  **gizella_baan-proulx@flsd .uscourts.gov** [1] - 1:23
  **governed** [1] - 22:11
  **government** [27] - 3:13, 4:2, 5:24, 7:5, 7:11, 7:13, 8:1, 11:9, 17:19, 25:9, 27:4, 27:14, 27:18, 27:22, 27:24, 27:25, 28:4, 28:8, 28:11, 29:1, 29:6, 29:15, 29:18, 30:9, 40:12, 40:18, 48:9
  **GOVERNMENT** [35] - 2:8, 3:1, 5:17, 9:5, 9:9, 9:19, 9:21, 9:23, 10:6, 10:8, 10:10, 10:13, 10:18, 11:20, 11:22, 11:25, 12:14, 13:5, 13:10, 13:23, 17:19, 22:2, 22:10, 24:9, 30:20, 31:12, 36:2, 41:17, 42:16, 45:16, 45:20, 45:22, 46:3, 46:24, 48:8
  **government's** [5] - 5:24, 7:12, 11:10, 28:18, 42:7
  **GRADY** [1] - 1:12
  **Grady** [10] - 2:9, 5:16, 17:14, 30:3, 30:19, 35:23, 41:15, 43:14, 46:23, 48:6
  **grand** [2] - 3:14
  **great** [1] - 51:12

  **gross** [1] - 22:13
  **guaranteed** [1] - 6:20
  **guess** [6] - 16:19, 23:6, 33:10, 34:11, 38:3, 52:24
  **guideline** [5] - 25:25, 26:7, 26:16, 27:6, 27:12
  **guidelines** [8] - 25:6, 25:14, 25:19, 26:1, 26:12, 26:20, 27:3
  **guilt** [2] - 6:16, 7:5
  **guilty** [42] - 3:5, 3:6, 3:22, 5:8, 5:9, 6:2, 6:10, 6:12, 6:15, 6:16, 7:4, 8:1, 8:8, 8:12, 8:13, 8:17, 18:7, 18:9, 18:11, 20:12, 20:20, 22:22, 23:9, 26:25, 27:17, 29:22, 29:25, 30:4, 30:10, 30:15, 30:16, 44:19, 46:7, 46:17, 47:20, 47:22, 47:24, 50:25, 51:2, 53:14, 54:1
  **guy** [1] - 23:2
  **guys** [1] - 53:1

**H**

  **hand** [1] - 45:17
  **hanging** [1] - 53:1
  **happy** [4] - 4:8, 47:22, 51:10, 53:15
  **harbored** [2] - 12:20, 30:23
  **harder** [1] - 45:18
  **harm** [35] - 12:24, 13:4, 31:3, 31:11, 38:24, 38:25, 40:21, 40:22, 40:23, 41:20, 41:25, 42:4, 42:6, 42:7, 43:2, 43:3, 43:11, 43:25, 44:1, 44:3, 44:23, 44:25, 45:8, 46:16, 47:6, 47:11, 47:13, 48:18, 50:5, 50:21, 51:24, 52:17
  **harmful** [1] - 39:3
  **head** [1] - 39:22
  **hear** [4] - 5:9, 7:11, 16:17, 33:21
  **heard** [2] - 23:19, 32:16
  **HEARING** [1] - 1:8
  **hearing** [3] - 5:11, 51:3, 54:3
  **held** [1] - 2:2
  **help** [2] - 29:7, 32:8
  **helpful** [5] - 7:14, 7:17, 10:23, 11:3, 31:16
  **hereby** [1] - 55:3
  **Herrera** [1] - 2:13
  **hesitation** [2] - 45:13, 51:4
  **higher** [1] - 27:13
  **highest** [1] - 4:17
  **himself** [1] - 3:16
  **Hinduism** [2] - 49:12, 49:16
  **hire** [2] - 6:22, 16:5

  **hold** [2] - 8:15, 9:17
  **honest** [1] - 14:16
  **Honor** [106] - 2:8, 2:11, 3:1, 3:3, 3:19, 3:24, 4:13, 5:13, 5:15, 5:17, 6:6, 6:9, 6:18, 7:1, 7:9, 7:20, 8:7, 8:11, 8:19, 8:21, 8:25, 9:5, 9:9, 9:19, 9:21, 10:10, 10:19, 11:20, 11:25, 12:14, 13:5, 13:11, 13:14, 14:10, 14:13, 15:6, 15:16, 16:1, 16:9, 17:20, 17:25, 18:18, 19:1, 19:4, 19:7, 19:10, 19:24, 20:13, 20:19, 21:8, 21:15, 21:21, 22:2, 22:10, 22:19, 24:7, 24:9, 24:20, 25:2, 26:9, 26:18, 27:2, 28:7, 28:16, 29:12, 29:23, 30:1, 30:18, 30:20, 31:12, 32:1, 32:5, 32:12, 33:9, 34:10, 34:25, 35:4, 35:6, 35:13, 35:22, 36:10, 36:16, 36:21, 37:3, 37:11, 38:1, 38:8, 38:13, 38:16, 38:20, 40:22, 41:18, 42:16, 43:21, 45:9, 45:16, 45:23, 46:4, 46:24, 47:1, 47:15, 48:4, 48:10, 48:13, 48:25, 52:12
  **honor** [1] - 28:11
  **HONORABLE** [1] - 1:9
  **Honorable** [1] - 1:21
  **host** [4] - 34:4, 34:5, 34:7, 37:18
  **hosting** [1] - 34:7
  **hours** [1] - 4:25

**I**

  **idea** [1] - 52:1
  **identified** [2] - 16:4, 30:21
  **identify** [1] - 29:8
  **if..** [1] - 39:9
  **ll** [2] - 1:17, 1:21
  **illegal** [2] - 23:17, 30:5
  **illegally** [1] - 29:2
  **illness** [1] - 4:21
  **illustrate** [1] - 25:24
  **immigration** [1] - 8:22
  **immoral** [1] - 50:13
  **important** [8] - 4:6, 8:14, 18:6, 25:12, 26:19, 30:8, 36:18, 52:7
  **impression** [1] - 31:9
  **imprisonment** [3] - 20:24, 21:9, 25:25
  **incarceration** [1] - 21:3
  **include** [2] - 24:13, 43:25
  **included** [2] - 24:16, 24:17
  **includes** [1] - 17:7
  **incur** [4] - 38:23, 41:20,

  41:25, 42:4
  **induced** [1] - 40:13
  **inferring** [1] - 36:1
  **inform** [1] - 3:25
  **information** [11] - 2:25, 3:5, 3:12, 3:17, 3:21, 7:13, 7:16, 20:1, 25:9, 28:12, 34:9
  **initial** [2] - 13:18, 13:21
  **innocence** [1] - 6:16
  **insert** [1] - 13:17
  **insist** [2] - 5:9, 6:15
  **instead** [1] - 9:15, 10:2, 11:23, 12:9
  **intend** [1] - 47:4
  **intended** [6] - 12:22, 13:2, 22:14, 46:12, 47:10, 51:23
  **intending** [1] - 52:15
  **intent** [1] - 46:13
  **interest** [1] - 33:24
  **interested** [2] - 34:2, 34:7
  **interview** [1] - 25:8
  **involuntary** [1] - 20:7
  **involved** [1] - 50:22
  **issue** [5] - 7:15, 23:1, 39:17, 49:24, 50:3
  **issues** [1] - 8:22

**J**

  **J-1** [3] - 31:21, 36:24, 42:21
  **jail** [1] - 20:25
  **Janardana** [2] - 34:14, 49:15
  **Jason** [1] - 2:4
  **JASON** [3] - 1:6, 1:16, 2:18
  **Jeffrey** [1] - 2:4
  **JEFFREY** [3] - 1:6, 1:16, 2:18
  **job** [4] - 7:4, 8:1, 45:5, 51:1
  **jobs** [1] - 32:8
  **JUDGE** [1] - 1:10
  **judge** [8] - 5:7, 5:8, 15:23, 16:13, 39:21, 40:11, 48:15, 51:16
  **Judge** [18] - 1:21, 2:5, 3:4, 5:6, 5:9, 20:23, 21:9, 23:8, 23:25, 24:3, 26:3, 26:11, 26:20, 27:5, 27:14, 28:14, 28:19, 52:2
  **jump** [2] - 19:16, 22:20
  **June** [1] - 38:3
  **jury** [9] - 3:14, 6:16, 7:24, 8:15, 30:10, 30:14, 47:9, 51:5
  **Justice** [1] - 1:13

**K**

  **Kazakhstan** [9] - 33:7, 33:23, 36:25, 37:21, 41:2,

42:11, 47:7, 49:19
**keep** [2] - 28:9, 35:17, 38:11
**keeps** [1] - 51:16
**kind** [5] - 23:23, 28:3, 44:3, 50:2, 50:22
**knowingly** [3] - 12:20, 20:4, 30:22
**knowledge** [1] - 36:1
**known** [3] - 37:13, 41:9, 42:10
**knows** [1] - 23:5

## L

**labor** [12] - 12:21, 12:23, 13:3, 20:5, 20:7, 30:25, 31:2, 31:5, 31:9, 42:17, 43:1, 46:10
**language** [4] - 13:6, 17:4, 24:17, 46:6
**last** [10] - 4:25, 9:25, 10:7, 11:7, 11:8, 14:7, 18:23, 28:2, 28:25, 29:13
**late** [1] - 11:7
**Lauderdale** [1] - 1:22
**law** [10] - 7:3, 20:6, 20:23, 23:19, 28:21, 29:10, 30:4, 38:17, 43:25, 50:4
**laws** [2] - 8:13, 20:10
**lawyer** [8] - 6:24, 7:12, 16:25, 19:19, 48:1, 51:9, 53:14, 53:25
**lawyers** [7] - 17:10, 21:23, 23:3, 24:5, 26:23, 30:5, 53:21
**lead** [1] - 8:18
**leading** [1] - 41:7
**learn** [1] - 27:24
**learned** [2] - 32:14, 38:18
**least** [2] - 17:15, 43:9
**leave** [1] - 35:25
**leaves** [1] - 26:21
**led** [3] - 38:21, 40:19, 41:14
**left** [2] - 12:16, 37:21
**legal** [3] - 4:1, 6:11, 8:9
**level** [5] - 4:17, 25:16, 27:9, 27:12, 27:15
**levels** [1] - 27:10
**lie** [1] - 50:16
**lied** [1] - 27:25
**likely** [3] - 8:18, 22:4, 23:3
**Lincoln** [1] - 33:17
**lined** [1] - 52:16
**lines** [4] - 10:11, 14:7, 18:23, 39:19
**listen** [1] - 51:7
**live** [3] - 43:5, 44:13, 45:4
**living** [2] - 43:7, 45:3
**lodging** [2] - 44:7, 44:9

**look** [2] - 12:15, 50:22
**looked** [1] - 32:3
**looking** [4] - 11:18, 19:15, 45:12, 52:3
**looks** [1] - 47:6
**lose** [1] - 8:14
**loss** [1] - 8:18
**losses** [2] - 23:16, 24:13
**loud** [1] - 36:11

## M

**ma'am** [1] - 10:6
**MAGISTRATE** [1] - 1:10
**mail** [2] - 11:6, 11:7
**mailed** [3] - 9:3, 10:15, 35:19
**make-believe** [2] - 26:5, 26:13
**male** [1] - 15:18
**mandates** [2] - 22:11, 28:22
**mandatory** [1] - 23:21
**manipulation** [1] - 15:18
**Manuel** [1] - 2:12
**mark** [2] - 11:1, 11:16
**marked** [1] - 10:25
**marriage** [1] - 42:11
**massage** [1] - 15:17
**massages** [33] - 9:12, 9:13, 9:16, 9:20, 10:3, 10:17, 12:5, 12:10, 15:11, 15:13, 17:15, 20:9, 22:14, 35:12, 36:7, 37:9, 37:24, 38:5, 38:7, 39:11, 39:19, 40:8, 41:9, 41:24, 42:3, 42:22, 43:2, 43:18, 43:24, 44:22, 45:2, 46:15, 52:16
**material** [1] - 42:11
**matter** [3] - 5:22, 35:23, 55:5
**matters** [1] - 6:4
**Matthew** [1] - 2:8
**MATTHEW** [1] - 1:12
**matthew.grady@usdoj. gov** [1] - 1:15
**maximum** [2] - 20:22, 24:25
**maximums** [1] - 22:24
**McALILEY** [1] - 1:9
**mean** [11] - 11:12, 14:18, 14:19, 29:4, 35:17, 39:5, 39:7, 39:9, 41:11, 44:14, 52:3
**meaning** [1] - 16:24
**means** [5] - 12:22, 22:1, 30:25, 31:6, 46:11
**meant** [2] - 13:1, 15:20
**media** [1] - 52:25
**medical** [1] - 24:13
**medication** [1] - 4:25
**meet** [2] - 25:7, 27:21

**meeting** [1] - 53:1
**meets** [1] - 53:19
**mental** [1] - 4:21
**mentally** [1] - 5:4
**mentioned** [7] - 15:1, 28:17, 35:22, 49:10, 49:19, 49:23, 50:1
**met** [3] - 33:16, 33:18, 41:12
**MIAMI** [1] - 1:2
**Miami** [6] - 1:17, 20:3, 33:17, 47:8, 49:20, 53:4
**Miami-Dade** [1] - 20:3
**microphone** [1] - 2:23
**midnight** [1] - 18:12
**might** [8] - 5:25, 6:1, 7:13, 7:16, 22:4, 29:5, 29:7, 44:24
**mind** [1] - 35:11
**minds** [1] - 47:11
**mine** [1] - 17:9
**minute** [5] - 11:8, 11:17, 23:1, 48:1, 52:9
**misconduct** [1] - 28:3
**misled** [1] - 43:19
**missing** [1] - 12:25
**mistake** [1] - 11:5
**moment** [7] - 3:6, 9:17, 13:5, 15:23, 24:22, 36:18, 51:13
**money** [6] - 38:9, 38:11, 45:4, 48:21, 48:22, 48:23
**months** [1] - 20:24
**Moore** [15] - 2:5, 5:7, 5:9, 20:23, 21:10, 23:8, 23:25, 24:3, 26:3, 26:11, 26:20, 27:5, 27:15, 28:14, 28:19
**morals** [1] - 50:19
**morning** [2] - 11:6, 11:7
**most** [2] - 13:6, 22:4
**mouth** [1] - 52:21
**move** [1] - 4:7
**multiple** [1] - 36:3
**Muslim** [15] - 41:2, 42:8, 47:7, 49:7, 49:8, 49:12, 49:13, 49:17, 49:20, 49:22, 49:24, 49:25, 50:3, 50:9, 52:23
**must** [1] - 21:22

## N

**nail** [1] - 24:22
**nailed** [1] - 23:22
**name** [4] - 14:7, 18:24, 32:23, 33:19
**nature** [2] - 22:9, 29:9, 42:12
**need** [11] - 2:24, 5:21, 6:3, 6:10, 14:22, 17:1, 23:11, 45:11, 46:18, 47:21, 52:20

**needed** [2] - 34:4, 43:9
**negate** [1] - 36:13
**negotiated** [1] - 17:10
**neighborhood** [1] - 24:5
**never** [7] - 14:25, 32:16, 39:6, 41:12, 44:7, 49:23, 49:25
**new** [1] - 7:17
**night** [1] - 11:7
**NO** [1] - 1:2
**none** [1] - 7:24
**notice** [1] - 24:4
**notion** [1] - 23:17
**number** [9] - 4:2, 23:21, 23:24, 24:21, 25:15, 25:16, 27:9, 27:13, 27:15
**numbers** [1] - 25:20, 26:3
**numerical** [1] - 25:15
**NW** [1] - 1:13

## O

**obligated** [1] - 3:25
**obtained** [5] - 12:21, 30:23, 30:25, 42:17, 46:9
**obtaining** [1] - 31:5
**obviously** [2] - 39:24, 40:1
**OF** [4] - 1:1, 1:4, 1:8, 1:13
**offense** [2] - 25:16, 27:9, 27:12
**offenses** [1] - 30:21
**offer** [2] - 12:4, 28:12
**offering** [2] - 38:4, 41:23
**office** [2] - 8:15, 28:13
**officer** [5] - 21:11, 25:8, 25:10, 25:13, 27:21
**Official** [1] - 1:20
**old** [2] - 4:15, 4:16
**once** [3] - 18:7, 24:2, 41:22
**one** [43] - 9:17, 10:1, 10:18, 12:2, 12:4, 12:9, 12:21, 12:23, 13:2, 13:5, 13:18, 15:13, 18:6, 18:13, 18:15, 23:25, 24:15, 27:15, 27:19, 32:9, 32:20, 32:22, 32:25, 33:1, 33:2, 33:3, 33:13, 33:19, 34:9, 35:4, 36:6, 38:6, 38:22, 40:3, 40:24, 42:17, 43:2, 44:2, 44:21, 45:1, 45:24, 51:19, 53:2
**One** [1] - 21:2
**oneself** [1] - 8:3
**open** [1] - 2:2
**operate** [2] - 15:8, 16:23, 34:19
**operated** [2] - 15:4, 17:8
**opinion** [1] - 23:3
**opinions** [2] - 23:5, 28:13
**opposing** [1] - 11:6
**order** [3] - 21:17, 21:22,

29:5
  **ordering** [1] - 29:5
  **original** [7] - 8:24, 11:1,
  12:1, 12:7, 14:2, 18:20,
  19:11
  **Orlando** [2] - 44:15, 48:17
  **otherwise** [2] - 14:5, 26:21
  **outside** [1] - 26:15
  **own** [6] - 31:16, 36:13,
  36:19, 39:23, 52:21, 53:18

**P**

**PA** [1] - 1:16
  **page** [12] - 9:10, 10:5, 10:9,
  11:17, 12:15, 13:16, 14:6,
  14:7, 15:2, 15:3, 18:22,
  18:23
  **paid** [2] - 38:10, 44:10
  **paper** [1] - 3:12
  **paragraph** [7] - 9:11, 9:14,
  9:24, 9:25, 10:9, 15:3, 15:15
  **pardon** [1] - 3:8
  **part** [10] - 17:23, 25:12,
  29:3, 39:8, 40:9, 41:7, 45:13,
  46:6, 49:18, 51:4
  **particular** [5] - 15:22, 16:3,
  20:8, 36:5, 45:25
  **particularly** [3] - 42:8,
  50:10, 50:11
  **parties** [6] - 9:12, 9:13,
  23:23, 28:21, 53:22
  **parts** [2] - 14:19, 30:6
  **path** [1] - 36:18
  **pattern** [1] - 12:22
  **pause** [1] - 48:5
  **pay** [7] - 21:17, 21:22, 24:3,
  25:4, 44:7, 44:9, 44:12
  **paying** [1] - 43:8
  **payment** [1] - 15:19
  **penalties** [2] - 20:22, 25:1
  **penalty** [1] - 53:11
  **penises** [1] - 15:18
  **Penthouse** [1] - 1:17
  **people** [4] - 15:22, 20:5,
  23:5, 38:3
  **people's** [1] - 16:15
  **perceive** [1] - 44:24
  **perception** [2] - 46:2, 46:3
  **perfectly** [1] - 48:8
  **perform** [14] - 12:23, 13:3,
  17:22, 31:2, 37:9, 37:23,
  40:8, 40:20, 41:8, 43:1,
  44:22, 46:14, 52:16
  **performance** [1] - 12:5
  **performed** [2] - 38:7, 41:20
  **performing** [6] - 10:2,
  12:10, 35:12, 36:6, 39:18,
  50:12
  **perhaps** [4] - 36:1, 39:19,

41:6, 51:8
  **period** [2] - 21:10, 21:12
  **perjury** [1] - 4:3
  **person** [11] - 23:7, 30:23,
  31:1, 31:2, 31:6, 31:9, 41:19,
  45:23, 46:10, 46:12
  **persons** [1] - 7:16
  **perspective** [3] - 48:20,
  50:6, 50:7
  **phone** [1] - 35:20
  **phrase** [2] - 9:17, 9:24
  **physical** [2] - 15:18, 24:14
  **physically** [1] - 5:3
  **pieces** [1] - 30:6
  **place** [1] - 45:4
  **plaintiff** [1] - 1:4
  **PLAINTIFF** [1] - 1:12
  **plan** [9] - 12:22, 30:25,
  41:19, 41:21, 42:18, 42:23,
  45:7, 51:25, 52:14
  **planet** [1] - 23:7
  **plea** [18] - 3:5, 5:9, 6:2,
  8:17, 8:24, 9:1, 9:5, 18:7,
  18:19, 18:25, 19:14, 20:21,
  21:24, 22:6, 26:25, 30:16,
  44:19, 53:13
  **PLEA** [1] - 1:8
  **plead** [18] - 3:6, 3:22, 5:7,
  6:10, 6:12, 6:15, 22:22,
  27:17, 29:22, 29:25, 47:20,
  47:22, 47:24, 50:25, 51:1,
  53:7, 53:14, 54:1
  **pleading** [6] - 8:8, 8:12,
  18:9, 18:10, 19:25, 20:12,
  20:20, 30:4, 46:7, 46:17
  **pled** [1] - 23:9
  **point** [8] - 4:9, 26:19,
  27:25, 37:21, 50:19, 52:4,
  53:21, 54:1
  **possess** [1] - 8:15
  **possibility** [1] - 45:1
  **possible** [5] - 20:22, 21:1,
  21:6, 21:19, 24:25
  **posted** [1] - 38:4
  **prepare** [1] - 25:10
  **presiding** [2] - 5:7, 5:11
  **pressured** [1] - 29:21
  **presumably** [1] - 44:13
  **presume** [1] - 7:3
  **pretense** [1] - 43:19
  **pretenses** [3] - 37:24, 40:3,
  42:20
  **pretty** [2] - 26:22, 51:3
  **previous** [1] - 10:14
  **prison** [2] - 26:2, 26:15
  **probation** [6] - 21:11, 25:8,
  25:10, 25:13, 27:21, 28:13
  **problem** [1] - 17:3
  **proceed** [4] - 16:16, 49:3,
  51:17, 52:11

  **proceedings** [2] - 2:2, 55:4
  **proceeds** [1] - 22:13
  **procured** [1] - 37:10
  **proffer** [19] - 8:23, 9:6,
  9:10, 9:16, 10:24, 13:19,
  14:1, 14:9, 15:14, 16:4, 17:5,
  17:16, 18:2, 30:11, 31:14,
  32:10, 35:18, 36:7, 38:3
  **profits** [1] - 22:14
  **program** [4] - 31:20, 31:23,
  32:3
  **promises** [2] - 28:9, 29:20
  **property** [1] - 29:1
  **prosecute** [1] - 4:3
  **prosecution** [1] - 10:3
  **prosecutor** [1] - 23:19
  **prostitution** [14] - 12:6,
  12:11, 14:25, 15:4, 15:8,
  15:12, 16:5, 16:14, 16:23,
  17:8, 17:17, 17:23, 50:17
  **prostitution-like** [1] - 50:17
  **PROULX** [2] - 1:20, 55:9
  **proulx@flsd.uscourts.**
  **gov** [1] - 1:23
  **prove** [6] - 6:1, 7:5, 30:10,
  40:19, 42:13, 44:20
  **provide** [2] - 20:5, 22:3,
  31:10, 43:18, 43:23
  **provided** [3] - 12:21, 30:23,
  30:24
  **providing** [3] - 31:5, 39:11,
  45:2
  **proving** [1] - 8:1
  **psychiatric** [2] - 24:14,
  24:16
  **psychological** [7] - 24:14,
  38:25, 39:7, 39:8, 40:2,
  40:23, 42:7
  **public** [1] - 8:15
  **punishment** [1] - 25:17
  **purpose** [2] - 31:22, 31:23
  **purposes** [2] - 22:6, 41:22
  **put** [6] - 7:23, 9:1, 24:4,
  31:15, 51:5, 52:13
  **putting** [2] - 31:9, 52:21

**Q**

  **qualified** [3] - 5:19, 6:20,
  6:24
  **questions** [3] - 4:9, 6:4,
  19:20
  **quick** [1] - 13:8
  **quickly** [1] - 4:8
  **quite** [2] - 16:21, 51:11
  **quote** [1] - 46:11

**R**

  **range** [5] - 23:25, 25:16,

25:25, 26:7, 26:16
  **reach** [1] - 32:19
  **reached** [4] - 32:17, 32:18,
  33:20, 34:6
  **read** [8] - 9:25, 10:24,
  17:16, 17:23, 19:18, 31:13,
  39:7, 46:5
  **reading** [6] - 3:4, 14:11,
  17:13, 17:14, 19:2, 39:19
  **reads** [1] - 11:25
  **ready** [6] - 16:16, 47:22,
  49:3, 50:25, 51:2, 51:17
  **real** [2] - 13:7, 42:14
  **realize** [3] - 4:24, 16:23,
  17:10
  **really** [12] - 10:16, 11:3,
  17:13, 18:6, 18:8, 24:22,
  25:19, 31:23, 36:11, 47:23,
  51:12, 53:16
  **reason** [4] - 6:21, 11:12,
  24:10, 30:13
  **reasonable** [5] - 7:5, 8:2,
  30:10, 48:20, 50:20
  **receive** [1] - 22:12
  **received** [4] - 3:7, 3:9, 11:7,
  22:13
  **receiving** [1] - 24:15
  **receptionist** [5] - 34:24,
  37:1, 37:9, 43:20, 50:15
  **receptionists** [3] - 35:3,
  35:8, 37:22
  **recess** [1] - 51:20
  **recklessly** [1] - 31:5
  **recognizes** [1] - 28:9
  **recommend** [4] - 26:20,
  27:8, 27:14, 53:7
  **recommendation** [1] -
  26:11
  **recommendations** [8] -
  27:4, 27:6, 27:19, 27:23,
  28:1, 28:5, 28:18, 28:21
  **recommended** [2] - 26:2,
  28:22
  **record** [3] - 51:13, 51:18,
  53:24
  **recruited** [4] - 12:20, 20:4,
  20:8, 30:22
  **reduce** [1] - 27:15
  **reduced** [1] - 27:9
  **reference** [2] - 10:17, 13:7
  **references** [2] - 9:14, 24:11
  **referred** [5] - 32:22, 32:25,
  33:15, 33:18, 34:9
  **referring** [1] - 9:15
  **regarding** [1] - 27:3
  **related** [1] - 24:14
  **release** [1] - 21:11
  **relevant** [1] - 49:23
  **religious** [2] - 41:3, 41:4
  **remainder** [1] - 9:16

rent [6] - 43:8, 44:7, 44:10, 44:11, 44:12, 45:3
rent-free [1] - 45:3
replacement [1] - 6:23
report [2] - 25:10, 25:12
REPORTED [1] - 1:20
represent [2] - 6:22, 6:24
representation [1] - 6:8
represented [1] - 35:7
representing [1] - 5:20
reputational [2] - 40:23, 42:6
reputations [1] - 39:1
required [4] - 22:5, 22:12, 26:1, 29:10
reschedule [1] - 53:14
resist [1] - 29:9
responsibility [2] - 27:10, 40:6
restitution [15] - 21:23, 22:3, 22:5, 22:7, 22:10, 22:18, 22:25, 23:15, 23:18, 23:21, 24:1, 24:3, 24:12, 24:16
retreat [1] - 49:11
return [2] - 15:19, 23:16
revealed [2] - 11:24, 12:2
review [3] - 6:12, 19:13, 30:11
reviewed [3] - 8:9, 29:14, 29:19
revised [1] - 12:8
revision [1] - 11:1
rights [6] - 6:11, 7:7, 7:18, 8:9, 8:14, 8:18
Rights [1] - 2:9
Road [1] - 33:17
Rodolfo [1] - 1:21
RPR [2] - 1:20, 55:9
Ruiz [1] - 1:21
run [3] - 20:25, 21:12, 21:18
running [1] - 17:17

**S**

safe [1] - 36:2
satisfied [1] - 6:7
satisfying [1] - 43:12
save [1] - 27:17
saw [2] - 11:16, 53:3
scenario [1] - 21:1
scheme [8] - 12:22, 30:25, 41:19, 41:21, 42:18, 42:23, 46:11
seat [1] - 2:22
second [7] - 9:23, 27:12, 30:24, 35:4, 41:18, 42:15, 43:12
secondly [2] - 27:24, 43:22
see [23] - 3:12, 7:12, 7:25,

10:23, 11:15, 12:16, 13:20, 14:7, 15:2, 17:21, 18:23, 19:25, 22:16, 25:11, 27:4, 28:25, 37:12, 38:2, 38:21, 45:12, 45:21, 47:23, 51:6
seem [1] - 16:2
sense [14] - 13:13, 24:6, 24:18, 25:22, 26:8, 26:17, 28:23, 29:11, 30:17, 36:15, 36:20, 41:25, 46:20, 47:14
sent [4] - 9:7, 10:21, 11:3, 11:6
sentence [20] - 9:11, 9:25, 10:7, 10:13, 10:14, 11:18, 11:19, 11:22, 12:7, 12:16, 20:24, 21:2, 21:5, 21:10, 22:23, 23:3, 23:8, 23:10, 25:5, 26:14
sentences [5] - 5:8, 10:20, 20:25, 26:20, 26:21
sentencing [11] - 25:3, 25:6, 25:11, 25:13, 25:19, 25:25, 26:1, 26:4, 26:6, 26:15, 28:2
September [1] - 1:5
serious [28] - 12:24, 13:4, 31:3, 31:10, 38:24, 38:25, 39:2, 40:21, 40:22, 41:20, 43:2, 43:3, 43:24, 44:3, 44:23, 44:25, 45:8, 46:16, 47:6, 47:10, 47:11, 47:13, 50:5, 50:21, 51:24, 52:17
seriously [1] - 26:3
services [19] - 12:21, 12:23, 13:3, 17:23, 20:5, 22:15, 24:13, 30:25, 31:2, 31:6, 31:9, 40:20, 41:8, 41:20, 42:9, 42:17, 43:1, 46:10, 46:14
servitude [1] - 20:7
set [6] - 38:23, 43:23, 47:5, 50:12, 50:17, 50:19
sets [1] - 20:21
sex [6] - 9:14, 9:15, 9:18, 10:17, 12:5, 38:5
shortened [1] - 10:22
shortening [1] - 20:4
show [1] - 42:24
side [2] - 39:24, 53:4
sign [2] - 14:9, 18:25
signature [1] - 14:6, 14:7, 18:23, 18:24
signed [1] - 17:4
significant [1] - 51:4
signing [1] - 3:12
similar [2] - 45:24
simply [1] - 43:25
sit [2] - 7:25, 8:15
six [1] - 21:13
slow [1] - 4:8

smart [2] - 23:2, 23:4
social [1] - 52:25
someone [3] - 8:13, 34:4, 46:15
somewhere [2] - 44:13, 48:21
sorry [3] - 10:4, 11:5, 40:17
sort [4] - 42:23, 43:5, 43:6, 52:17
sound [2] - 23:13
sounds [3] - 23:14, 23:18, 23:21, 23:23, 51:21, 51:25
source [1] - 41:10
SOUTHERN [1] - 1:1
special [1] - 25:4
spending [1] - 47:25
sponsor [1] - 32:9
sponsored [2] - 34:3, 37:18
sponsors [1] - 32:7
spot [1] - 10:14
stand [3] - 2:15, 7:23, 48:14
start [3] - 14:2, 31:18, 43:13
starting [4] - 9:11, 9:24, 34:12
State [2] - 31:19, 32:7
state [1] - 2:7
statement [9] - 16:7, 17:5, 17:7, 17:9, 17:11, 17:12, 36:9, 47:17
states [1] - 50:4
States [9] - 2:3, 13:6, 30:20, 41:22, 41:23, 42:2, 42:19, 42:25, 48:9
STATES [4] - 1:1, 1:4, 1:10, 1:13
statute [7] - 13:6, 40:1, 40:5, 40:11, 45:14, 45:20, 51:24
stay [5] - 18:12, 40:10, 44:16, 48:17
staying [1] - 44:17
Stenographer [1] - 1:20
step [1] - 3:13
still [1] - 53:13
stop [2] - 10:4, 19:18
stopped [2] - 38:18, 40:25
Street [1] - 1:13
strip [1] - 39:23
strong [2] - 49:13, 50:11
student [1] - 50:8
students [7] - 31:20, 32:8, 32:21, 32:22, 33:23, 34:22, 42:21
studio [7] - 12:3, 34:19, 34:22, 35:9, 37:1, 44:17, 50:15
Studio [1] - 34:15
subject [1] - 29:8
subpoenas [1] - 7:15

subsection [1] - 46:11
sudden [1] - 49:18, 50:3
suffer [15] - 12:24, 13:4, 31:2, 31:10, 40:20, 43:2, 43:24, 44:22, 45:7, 46:16, 47:5, 50:5, 50:21, 51:24, 52:17
suffered [2] - 4:21, 48:18
suffering [1] - 44:25
suggest [2] - 19:14, 51:17
Suite [1] - 1:13
summarize [2] - 19:16, 36:4
summarizing [1] - 20:14
summary [1] - 20:11
summer [11] - 31:19, 31:22, 32:22, 33:10, 33:11, 33:16, 33:25, 34:12, 37:15, 43:5, 50:9
superseding [5] - 2:5, 2:25, 3:5, 3:21, 20:1
supervised [1] - 21:11
supervision [1] - 21:11
sustain [3] - 42:1, 42:5, 43:9, 44:2
sworn [3] - 2:15, 2:19, 4:1

**T**

table [1] - 47:3
telephone [1] - 36:3
term [3] - 9:12, 20:24, 21:9
terms [2] - 19:8, 44:6
testified [1] - 2:19
testify [1] - 7:23
THE [352] - 1:1, 1:9, 1:12, 1:16, 2:3, 2:6, 2:8, 2:10, 2:11, 2:14, 2:21, 2:22, 3:1, 3:2, 3:3, 3:8, 3:9, 3:10, 3:19, 3:20, 3:24, 3:25, 4:5, 4:6, 4:13, 4:14, 4:16, 4:17, 4:19, 4:20, 4:23, 4:24, 5:2, 5:3, 5:5, 5:6, 5:13, 5:14, 5:15, 5:16, 5:17, 5:18, 6:6, 6:7, 6:9, 6:10, 6:18, 6:19, 7:1, 7:2, 7:9, 7:10, 7:20, 7:21, 8:7, 8:8, 8:11, 8:12, 8:19, 8:20, 8:21, 8:22, 8:25, 9:1, 9:5, 9:8, 9:9, 9:17, 9:19, 9:20, 9:21, 9:22, 9:23, 10:4, 10:6, 10:7, 10:8, 10:9, 10:10, 10:12, 10:13, 10:16, 10:18, 10:23, 11:5, 11:11, 11:13, 11:15, 11:20, 11:21, 11:22, 11:23, 11:25, 12:12, 12:14, 12:15, 13:5, 13:9, 13:10, 13:13, 13:14, 13:15, 13:23, 13:24, 13:25, 14:10, 14:11, 14:13, 14:14, 14:16, 14:17, 14:18, 14:22, 14:24, 15:2, 15:6, 15:7, 15:8, 15:10,

15:11, 15:13, 15:16, 15:17,
15:23, 15:25, 16:1, 16:2,
16:9, 16:11, 16:12, 16:17,
16:19, 16:21, 17:12, 17:13,
17:19, 17:21, 17:25, 18:1,
18:4, 18:5, 18:18, 18:19,
18:21, 18:22, 19:1, 19:2,
19:4, 19:5, 19:7, 19:8, 19:10,
19:11, 19:21, 19:22, 19:24,
19:25, 20:13, 20:14, 20:19,
20:20, 21:8, 21:9, 21:15,
21:16, 21:21, 21:22, 22:2,
22:7, 22:10, 22:16, 22:19,
22:20, 23:14, 23:15, 24:7,
24:8, 24:9, 24:18, 24:20,
24:21, 24:24, 24:25, 25:2,
25:3, 25:23, 25:24, 26:9,
26:10, 26:18, 26:19, 27:2,
27:3, 28:7, 28:8, 28:16,
28:17, 28:24, 28:25, 29:12,
29:13, 29:17, 29:18, 29:23,
29:24, 30:1, 30:2, 30:18,
30:19, 30:20, 31:8, 31:12,
31:13, 32:1, 32:2, 32:5, 32:6,
32:12, 32:13, 32:15, 32:18,
32:20, 32:25, 33:2, 33:3,
33:5, 33:6, 33:9, 33:10,
33:12, 33:13, 33:15, 33:22,
34:1, 34:2, 34:3, 34:8, 34:10,
34:11, 34:16, 34:17, 34:18,
34:19, 34:20, 34:21, 34:23,
34:24, 34:25, 35:1, 35:4,
35:5, 35:6, 35:7, 35:10,
35:11, 35:13, 35:14, 35:16,
35:23, 36:2, 36:8, 36:10,
36:11, 36:16, 36:17, 36:21,
36:22, 37:3, 37:4, 37:6, 37:7,
37:11, 37:12, 37:17, 37:21,
38:1, 38:2, 38:8, 38:9, 38:13,
38:14, 38:16, 38:17, 38:20,
38:21, 39:5, 39:10, 39:16,
39:17, 39:21, 40:7, 40:11,
40:16, 40:22, 41:6, 41:11,
41:13, 41:17, 42:13, 42:16,
42:13, 43:16, 43:17, 43:21,
43:22, 44:6, 44:11, 44:14,
44:18, 45:9, 45:10, 45:16,
45:17, 45:20, 45:21, 45:22,
46:2, 46:3, 46:5, 46:8, 46:9,
46:21, 46:22, 46:24, 46:25,
47:1, 47:2, 47:15, 47:16,
47:19, 47:20, 48:2, 48:3,
48:4, 48:6, 48:8, 48:11,
48:13, 48:14, 48:15, 49:4,
49:7, 50:4, 51:16, 51:21,
52:2, 52:11, 52:13, 52:19,
52:20, 52:22, 53:6
  **theirs** [1] - 50:20
  **themselves** [6] - 38:11,
42:1, 42:5, 43:9, 44:2, 44:25
  **theoretically** [1] - 21:6

  **theory** [1] - 40:12
  **Thereupon** [3] - 2:17, 48:5,
54:3
  **thinking** [4] - 23:24, 36:11,
36:25, 43:19
  **thinks** [1] - 39:20
  **third** [1] - 31:4
  **thoughts** [2] - 49:5, 51:14
  **threatened** [1] - 29:21
  **three** [4] - 10:10, 21:12,
27:20, 30:21
  **throughout** [1] - 9:16
  **tied** [1] - 39:24
  **Title** [1] - 40:17
  **today** [17] - 4:2, 4:7, 5:3,
5:8, 6:12, 8:8, 8:17, 18:25,
25:7, 26:24, 27:25, 28:2,
29:22, 47:22, 47:24, 51:1,
53:11
  **today's** [1] - 14:8
  **together** [1] - 52:14
  **top** [2] - 13:16, 15:2
  **total** [2] - 21:13, 21:19
  **touch** [1] - 33:3
  **transcription** [1] - 55:4
  **transfer** [1] - 29:7
  **transport** [1] - 12:20
  **transported** [1] - 30:23
  **travel** [1] - 31:19
  **traveled** [1] - 32:21
  **treated** [1] - 4:20
  **trial** [11] - 6:2, 6:19, 6:22,
6:24, 7:2, 7:8, 7:10, 7:19,
7:21, 8:6, 47:21
  **tried** [1] - 52:8
  **true** [7] - 29:16, 29:17, 38:7,
38:19, 39:13, 52:18, 52:20
  **truth** [1] - 4:1
  **truthful** [4] - 4:2, 18:17,
27:22
  **try** [2] - 4:7, 19:15
  **trying** [8] - 11:2, 11:15,
14:20, 20:17, 22:3, 45:18,
48:19, 52:4
  **turned** [2] - 35:2, 38:10
  **turns** [1] - 50:15
  **Two** [1] - 21:3
  **two** [42] - 3:22, 9:6, 10:1,
10:20, 11:2, 12:2, 12:4, 12:9,
12:17, 12:21, 12:23, 13:2,
13:12, 13:17, 14:3, 15:22,
16:3, 20:1, 20:8, 20:21, 27:4,
27:9, 32:25, 33:1, 34:8, 34:9,
35:8, 36:6, 36:24, 37:13,
38:6, 38:22, 42:18, 44:21,
45:6, 45:24, 46:10, 46:13,
47:4, 51:22, 52:15
  **typically** [1] - 8:14

## U

  **U.S** [3] - 1:13, 3:16, 20:10
  **ultimately** [2] - 17:10, 23:25
  **uncertain** [1] - 4:11
  **uncertainties** [1] - 19:22
  **under** [14] - 8:13, 21:11,
22:11, 22:12, 31:9, 31:21,
37:24, 40:3, 40:12, 41:22,
42:19, 43:18, 45:24, 46:11
  **underlined** [1] - 10:24
  **understood** [3] - 20:16,
39:1, 45:6
  **undertook** [1] - 22:8
  **UNITED** [4] - 1:1, 1:4, 1:10,
1:13
  **United** [9] - 2:3, 13:6,
30:20, 41:22, 41:23, 42:2,
42:19, 42:25, 48:9
  **university** [1] - 31:20
  **unless** [3] - 28:21, 44:20,
51:11
  **up** [26] - 6:12, 8:9, 10:11,
10:22, 10:25, 11:1, 11:16,
13:19, 20:4, 20:25, 21:12,
21:17, 25:15, 25:20, 25:25,
26:3, 38:23, 39:24, 40:3,
42:24, 43:23, 47:5, 50:12,
50:17, 52:16, 52:23
  **USA** [1] - 49:20
  **USC** [4] - 13:7, 22:11,
30:21, 46:6

## V

  **vehicle** [1] - 38:6
  **version** [1] - 12:1
  **versus** [1] - 2:4
  **victim** [24] - 10:1, 12:2,
12:4, 12:17, 12:21, 12:22,
13:2, 13:12, 13:17, 24:15,
33:1, 33:2, 33:3, 33:13,
33:19, 38:6, 38:21, 42:17,
42:18, 44:21, 50:5
  **victim's** [1] - 50:6
  **victims** [17] - 12:9, 16:4,
20:9, 22:8, 23:16, 34:9, 36:6,
36:19, 37:13, 39:22, 40:19,
41:25, 45:6, 45:24, 48:16,
52:5
  **victims'** [1] - 24:13
  **video** [1] - 39:22
  **view** [2] - 51:5, 52:4
  **violation** [1] - 20:5
  **vis** [2] - 36:19
  **vis-a-vis** [1] - 36:19
  **visa** [3] - 31:21, 34:4, 42:21
  **visas** [1] - 36:24
  **vote** [1] - 8:15
  **vs** [1] - 1:5

## W

  **waive** [1] - 3:4
  **wants** [1] - 51:19
  **Washington** [1] - 1:14
  **ways** [2] - 8:3, 44:24
  **welcome** [1] - 2:14
  **Wellness** [2] - 34:15, 49:16
  **wellness** [2] - 15:11, 49:11
  **whole** [4] - 10:24, 49:7,
49:18, 50:2
  **willingly** [1] - 37:23
  **withdraw** [1] - 26:25
  **witness** [1] - 7:22
  **witnesses** [3] - 7:11, 7:13,
7:23
  **woman** [2] - 47:7, 50:8
  **women** [14] - 17:22, 20:8,
32:25, 34:8, 34:13, 35:8,
36:24, 39:10, 39:18, 46:11,
46:13, 47:4, 51:22, 52:15
  **word** [3] - 7:25, 14:11, 19:2
  **words** [7] - 12:17, 14:3,
20:4, 31:16, 52:21, 53:19
  **worse** [1] - 26:22
  **worst** [1] - 21:1
  **write** [1] - 13:15
  **written** [1] - 12:18

## Y

  **years** [12] - 4:16, 20:25,
21:2, 21:3, 21:12, 21:13,
26:2, 26:5, 26:14, 26:15
  **yesterday** [4] - 9:7, 10:15,
10:21, 12:8
  **Yoga** [2] - 34:14, 49:15
  **yoga** [7] - 12:3, 34:19,
34:22, 35:9, 37:1, 49:11,
50:15
  **young** [11] - 20:8, 34:13,
35:8, 36:24, 39:10, 39:18,
46:10, 47:7, 50:8, 51:22,
52:15
  **yourself** [2] - 7:22, 8:6

## Z

  **Zeljka** [1] - 2:11
  **ZELJKA** [1] - 1:16
  zeljka@bozaniclaw.com
[1] - 1:18